LEVITT & SLAFKES, P.C.
515 Valley Street - Suite 140
Maplewood, New Jersey 07040
Phone: (973) 313-1200
Email: blevitt@lsbankruptcylaw.com
Attorneys for Debtors
BY: Bruce H. Levitt, Esq. (BL9302)

|  |  |  |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | | |
| In Re: RANDALL JACOBS and JILL JACOBS, Debtors. | : : : : : : : : | Chapter 13 Case No.: 10-46222-RG |
| RANDALL JACOBS and JILL JACOBS, Plaintiff, vs. NATIONSTAR MORTGAGE, LLC, Defendant. | : : : : : : : : : : : : : | Adv. Pro. No.: ADVERSARY PROCEEDING SEEKING ISSUANCE OF THE PERMANENT LOAN MODIFICATION AND DAMAGES |

Plaintiffs, Randall Jacobs and Jill Jacobs, by way of Complaint against Defendant say as follows:

### PARTIES

1.   Plaintiff Randall Jacobs ("Mr. Jacobs") is a Debtor in this joint Chapter 13 matter residing at 5 Hampton Court, Caldwell, New Jersey 07066.

2. Plaintiff Jill Jacobs ("Mrs. Jacobs") is a Debtor in this joint Chapter 13 matter also residing at 5 Hampton Court, Caldwell, New Jersey 07066.

3. Defendant Nationstar Mortgage, LLC is a business organization having offices located at 8950 Cypress Waters Boulevard, Dallas, Texas 75019.

## JURISDICTION AND VENUE

4. On November 23, 2010, Mr. and Mrs. Jacobs (the "Jacobses") filed a voluntary joint petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

5. This Court has subject matter jurisdiction over this adversary proceeding and has personal jurisdiction over the Debtors pursuant to 28 U.S.C. § 157 and § 1334.

6. This adversary proceeding is a core proceeding arising under 11 U.S.C. § 101 et. Seq. and 28 U.S.C. § 157(b)(2)(A) and (O).

7. Venue is proper in this district pursuant to 11 U.S.C. § 1409.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. On May 13, 2005, the Jacobses borrowed $750,000.00 from Wilmington Finance, Inc., a division of AIG Federal Savings Bank (the "Original Lender") pursuant to a 30-year fixed interest rate promissory note bearing an initial interest rate

2

of 6.75% (the "Note"). The monthly principal and interest payment was $4,764.49.

9. To secure repayment of the Note, the Jacobses executed a Mortgage (the "Mortgage") granting Original Lender a first priority security interest in real estate located at 5 Hampton Court, Caldwell New Jersey 07066. The Mortgage was recorded as Instrument No. 000005075671, at Book 10492 Page 816 in the county recorder's office of Essex County, New Jersey.

10. On or about February 26, 2011, Original Lender assigned the Mortgage to the Bank of New York Mellon Trust Company (the "Secured Creditor").

11. BAC Home Loans Servicing, LP ("BofA"), now known as Bank of America, N.A., was the previous servicer for the mortgage loan at issue. Defendant Nationstar Mortgage, LLC ("Nationstar") currently acts as servicer on behalf of Secured Creditor.

12. On November 23, 2010, the Jacobses filed a joint petition for relief under Chapter 13 of the Bankruptcy Code (the "filing date"). The Jacobses' Chapter 13 repayment plan (the "Plan") was confirmed by Court Order entered on March 31, 2011 and contemplated a 100% distribution to creditors.

13. Pursuant to the terms of their Plan, the Jacobses paid sixty consecutive monthly payments to the Chapter 13 Trustee

(the "Trustee"), and completed their Chapter 13 repayment plan obligations with a final payment on or about November 15, 2015.

14. Approximately one year after the filing date, the Jacobses applied for participation in BofA's mortgage modification program by complying with its continuing and voluminous document requests.

15. By letter dated May 30, 2013, BofA informed the Jacobses that they were approved to enter into BofA's Trial Period Plan (the "TPP") for mortgage modification. The BofA TPP required the Jacobses to make three (3) TPP payments for the months of July, August and September 2013, each in the amount of $6,887.83. The Jacobses made each of the aforementioned TPP payments on a timely basis.

16. By separate letter also dated May 30, 2013, BofA informed the Jacobses that the escrow portion of their monthly payments was to increase from $1,567.18 to $1,761.41 effective July 1, 2013. This letter also stated that the principal balance was $674,393.99.

17. By letter dated June 11, 2013, BofA informed the Jacobses that "the servicing of [their] home loan will transfer to Nationstar Mortgage LLC on July 01, 2013." This notice indicated that "if you are currently being considered for a loan modification..., your new servicer Nationstar Mortgage LLC is

aware of your current status and will have all of your documents."

18. By letter dated July 11, 2013, Nationstar informed the Jacobses' counsel that it had "recently acquired" the Mortgage.

19. By letter dated July 12, 2013, Nationstar informed the Jacobses that "Nationstar Mortgage is now the servicer for your mortgage account." This notice conflicted with the aforementioned July 11, 2013 notice from Nationstar, in which it indicated that it had "acquired" the Mortgage.

20. By letter dated July 31, 2013, Nationstar gave the Jacobses contact information for their Single Point of Contact, Naynay Russ ("Ms. Russ"). This letter stated that Ms. Russ would "answer any further questions regarding [their] loan status or possible assistance."

21. For the next three months, Mr. Jacobs called and faxed Ms. Russ. Ms. Russ never returned any of his messages.

22. It was not until October 2013 when Mr. Jacobs was finally able to get in contact with an individual named Justin Harmel, an employee and/or agent of Nationstar. Mr. Harmel verbally confirmed that Nationstar would honor the mortgage modification agreed to by BofA. Mr. Harmel further informed him that Nationstar would be sending a mortgage modification agreement (the "Modification Agreement") to him in the near future.

23. On November 12, 2013, the Jacobses received a Letter of Acknowledgment from Nationstar enclosing the Modification Agreement. This letter stated in pertinent part that:

> "[b]y executing this Letter of Acknowledgment and the Modification Agreement, [the Jacobses] are agreeing to make a qualifying payment of $0.00 for your Modification Agreement to become effective."

24. Before executing the Letter of Acknowledgment, Mr. Jacobs discovered that the Modification Agreement overstated the principal balance of the Mortgage by $35,429.04 to the incorrect amount of $709,823.03. This overstated unpaid principal balance flatly contradicted the $674,393.99 contained in BofA's March 30, 2013 letter.

25. Because of the error in the principal balance due, the Jacobses did not execute or return the Modification Agreement to Nationstar.

26. After receiving the conflicting and incorrect documentation from Nationstar, Mr. Jacobs attempted to contact Ms. Russ in order to discuss the Modification Agreement and the discrepancies contained therein. Once again, Mr. Jacobs did not receive a response from Ms. Russ.

27. By e-mail dated November 13, 2013, Mr. Jacobs advised Mr. Harmel that although he had received Nationstar's Modification Agreement, the unpaid principal balance contained therein had inexplicably been increased from $674,393.99 to

6

$709,823.03. Mr. Jacobs further advised that timely mortgage payments were made for July, August and September 2013, and that he was ready, willing and able to continue making monthly payments. Lastly, Mr. Jacobs requested that Nationstar provide him with an updated Modification Agreement based upon a corrected unpaid principal balance.

28. As of this date, Mr. Jacobs has not received a response to his November 13, 2013 e-mail.

29. In or about December 2013, Mr. Jacobs managed to speak with a Nationstar employee and/or agent. During this conversation, Nationstar's employee and/or agent advised him that Nationstar was in the process of preparing a revised Modification Agreement, and that Nationstar would defer all payments due until it delivered the revised Modification Agreement to the Jacobses. Despite these assurances, Mr. Jacobs has not received a revised Modification Agreement.

30. By certified letter and facsimile dated January 3, 2014, Mr. Jacobs contacted Ms. Russ and emphasized his frustration with Nationstar's lack of communication, its failure to correct the overstated unpaid principal balance and to send him a revised Modification Agreement. Mr. Jacobs also attached a copy of his November 13, 2013 email to Mr. Harmel for Ms. Russ's review. Mr. Jacobs has not received any form of response to his January 3, 2014 certified letter or facsimile.

31. Despite Nationstar's failure to respond, the Jacobses continued making payments of principal and interest to Nationstar based on their own calculations as to the correct unpaid principal balance. Shortly thereafter the Jacobses increased these payments to account for property taxes, and directly paid the home insurance carrier.

32. The Jacobses continued to regularly make these monthly mortgage payments until early 2014.

33. In March 2014, due in large measure to the stress caused by the situation with Nationstar, Mr. Jacobs suffered a heart attack and underwent emergency open heart surgery at Morristown Memorial Hospital. He was hospitalized for approximately two (2) weeks, and was unable to operate a motor vehicle or return to employment until the end of June 2014. As a result, the Jacobses were only able to make intermittent payments to Nationstar.

34. Although Nationstar continued to cash the Jacobses' mailed payment checks, it never once sent the them a bill, statement of account, notice or response of any kind to their numerous inquiries. Mr. Jacobs attempted to go online to the Nationstar website but was unable to access his account or make any electronic payments.

35. In an effort to finally elicit a response from Nationstar, on or about April 9, 2014, Mr. Jacobs filed a

complaint with the State of New Jersey Department of Banking & Insurance (the "Banking Department").

36. By letter dated April 16, 2014, the Banking Department advised Mr. Jacobs that it had received his complaint, and that its investigative staff would contact Nationstar to request a "complete response to the issues" he had raised.

37. Notwithstanding the foregoing, Mr. Jacobs still has not received any communication from Nationstar regarding the monthly mortgage payments made and/or missed, its promised revision of the overstated unpaid principal balance due on the Mortgage, or a revised Modification Agreement. Thus, the Jacobses have no way of knowing the exact monthly mortgage payments due, the amounts credited and/or deferred by Nationstar, or the correct unpaid principal balance due on the Mortgage.

## COUNT ONE
### (Breach of Contract)

38. The Jacobses repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 37 of this Complaint.

39. The May 30, 2013 TPP was an offer by BofA to modify the Jacobses' 2005 Note and Mortgage forming the basis for this action.

40. The Jacobses accepted BofA's offer.

41. The Jacobses complied with all requirements necessary to accept BofA's offer to modify the terms of the 2005 Note and Mortgage, including without limitation: timely making the three (3) required TPP payments to Nationstar for the months of July, August and September of 2013.

42. The Jacobses acceptance of BofA's offer formed a binding contract (the "May 30, 2013 contract").

43. By offering the TPP, BofA had a duty to honor its terms and to provide the Jacobses with a Permanent Modification pursuant to same.

44. Nationstar, as successor to BofA, is obligated to honor the terms of the TPP and to provide the Jacobses with a Permanent Modification pursuant to same.

45. Nationstar breached its duty to the Jacobses under the May 30, 2013 contract by grossly overstating the unpaid principal balance, failing to correct the unpaid principal balance despite being duly notified of its error and refusing to provide the revised Permanent Modification as promised.

46. Mr. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from him that he would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to his credit making obtaining of credit difficult, additional harm and

unnecessary fees to his mortgage balance, causing him to expend funds to defend a potential additional foreclosure action, and causing him to expend funds related to medical treatment.

47. As a proximate result of Nationstar's conduct Mr. Jacobs suffered non-economic damages including without limitation: suffering a heart attack requiring medical intervention, an unsafe increase in his blood pressure, anxiety, stress, fear of losing his home, lack of sleep, and inability to focus.

48. Mrs. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from her that she would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to her credit making obtaining of credit difficult, additional harm and unnecessary fees to her mortgage balance and causing her to expend funds to defend a potential additional foreclosure action.

49. As a proximate result of Nationstar's conduct Mrs. Jacobs suffered non-economic damages including, without limitation: anxiety, stress, fear of losing her home, lack of sleep, and inability to focus.

**WHEREFORE,** the Jacobses pray for relief as follows:

A. Requiring Nationstar to provide the Jacobses with a

revised permanent mortgage modification pursuant to the terms of the May 30, 2013 contract;

B. For compensatory and consequential damages;

C. For attorneys' fees and costs of suit; and

D. For such other and further relief as this Court deems just and proper.

## COUNT TWO
### (Good Faith and Fair Dealing)

50. The Jacobses repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 49 of this Complaint.

51. Both the initial mortgage documents and the May 30, 2013 contract imposed a duty of good faith and fair dealing on Defendants.

52. Nationstar breached its duty to the Jacobses by grossly overstating the unpaid principal balance in the Modification Agreement, repeatedly and continually refusing in bad faith to communicate with the Jacobses after being put on notice of its error(s) and failing to correct those error(s).

53. Nationstar denied the Jacobses the benefit of the bargain originally intended by the parties by intentionally stringing out the modification process, forcing them to incur costs and then ultimately failing to issue a revised Modification Agreement as promised.

54. Mr. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from him that he would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to his credit making obtaining of credit difficult, additional harm and unnecessary fees to his mortgage balance, causing him to expend funds to defend a potential additional foreclosure action, and causing him to expend funds related to medical treatment.

55. As a proximate result of Nationstar's conduct Mr. Jacobs suffered non-economic damages including without limitation: heart attack requiring medical intervention, unsafe increase in his blood pressure, anxiety, stress, fear of losing his home, lack of sleep, and inability to focus.

56. Mrs. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from her that she would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to her credit making obtaining of credit difficult, additional harm and unnecessary fees to her mortgage balance and causing her to expend funds to defend a potential additional foreclosure action.

57. As a proximate result of Nationstar's conduct Mrs.

Jacobs suffered non-economic damages including, without limitation: anxiety, stress, fear of losing her home, lack of sleep, and inability to focus.

**WHEREFORE,** the Jacobses pray for relief as follows:

A.   Requiring Nationstar to perform its obligations under the May 30, 2013 contract and issue a permanent mortgage modification in accordance with same;

B.   For compensatory and consequential damages;

C.   For attorneys' fees and costs of suit; and

D.   For such other and further relief as this Court deems just and proper.

## COUNT THREE
### (New Jersey Consumer Fraud Act)

58.   The Jacobses repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 57 of this Complaint.

59.   The Jacobses and Nationstar are "persons" as that term is defined in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. (the "CFA").

60.   The Jacobses relationship with Nationstar arose out of a "consumer transaction" as that term is defined in the CFA.

61.   Nationstar violated the CFA by engaging in unconscionable, unfair and deceptive commercial practices, misrepresentations and fraud, including but not limited to that

described in detail in the preceding paragraphs, and summarized as follows:

A. Participating in a mortgage modification program and failing to honestly or effectively implement it;

B. Refusing to honor the terms of the May 30, 2013 contract to permanently modify the Jacobses' mortgage despite their successful completion and fulfillment of all requirements and/or obligations pursuant to the TPP;

C. Unjustifiably and unreasonably overstating the unpaid principal balance;

D. Unjustifiably and unreasonably failing to communicate with the Jacobses after being notified of its error(s);

E. Unjustifiably, unreasonably and repeatedly refusing to reply to the Jacobses' inquiries, whether they were by telephone, email, facsimile, certified mail or otherwise;

F. Extracting money from the Jacobses that they would not have paid absent the TPP; and

G. Filing a Motion with this court for Relief from the Automatic Stay to Permit Foreclosure despite the May 30, 2013 contract to permanently modify the Jacobses' mortgage.

62. Mr. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from him that he would not otherwise have paid absent the

TPP, increased and unnecessary arrears, harm to his credit making obtaining of credit difficult, additional harm and unnecessary fees to his mortgage balance, causing him to expend funds to defend a potential additional foreclosure action, and causing him to expend funds related to medical treatment.

63. Mrs. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from her that she would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to her credit making obtaining of credit difficult, additional harm and unnecessary fees to her mortgage balance and causing her to expend funds to defend a potential additional foreclosure action.

**WHEREFORE**, the Jacobses pray for relief against Nationstar as follows:

A. For compensatory and consequential damages;

B. For treble damages;

C. For attorneys' fees and costs of suit; and

D.  For such other and further relief as this Court deems just and proper.

LEVITT & SLAFKES, P.C.
Attorneys for Plaintiffs

By: /s/ Bruce H. Levitt
Bruce H. Levitt

Dated: June 20, 2016