LoFaro & Reiser, L.L.P.
(Glenn R. Reiser)
20 Court Street
Hackensack, New Jersey 07601
(201) 498-0400
Attorneys for Plaintiffs

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>RANDALL S.D. JACOBS and JILL W. JACOBS,<br><br>Debtors, | CHAPTER 13<br><br>Case No.: 10-46222-RG |
| RANDALL S.D. JACOBS and JILL W. JACOBS,<br><br>Plaintiffs,<br><br>Vs.<br><br>NATIONSTAR MORTGAGE, LLC d/b/a MR. COOPER,<br><br>Defendant. | Adv. Pro. No.: 16-01528-RG<br><br>**AMENDED ADVERSARY COMPLAINT** |

Plaintiffs, Randall Jacobs and Jill Jacobs (collectively "Plaintiffs"), by way of Complaint against Defendant say as follows:

## **PARTIES**

1. Plaintiff Randall Jacobs ("Mr. Jacobs") is a Debtor in this joint Chapter 13 matter residing at 5 Hampton Court, Caldwell, New Jersey 07066.

2. Plaintiff Jill Jacobs ("Mrs. Jacobs") is a Debtor in this joint Chapter 13 matter also residing at 5 Hampton Court, Caldwell, New Jersey 07066.

3. Defendant Nationstar Mortgage, LLC is a business organization having offices located at 8950 Cypress Waters Boulevard, Dallas, Texas 75019.

## JURISDICTION AND VENUE

4.  On November 23, 2010, Plaintiffs filed a voluntary joint petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

5.  This Court has subject matter jurisdiction over this adversary proceeding and has personal jurisdiction over the Debtors pursuant to 28 U.S.C. § 157 and § 1334.

6.  This adversary proceeding is a core proceeding arising under 11 U.S.C. § 101 et. Seq. and 28 U.S.C. § 157(b)(2)(A) and (O).

7.  Venue is proper in this district pursuant to 11 U.S.C. § 1409.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.  On May 13, 2005, Plaintiffs borrowed $750,000.00 from Wilmington Finance, Inc., a division of AIG Federal Savings Bank (the "Original Lender") pursuant to a 30-year fixed interest rate promissory note bearing an initial interest rate of 6.75% (the "Note"). The monthly principal and interest payment was $4,764.49.

9.  To secure repayment of the Note, Plaintiffs executed a Mortgage (the "Mortgage") granting Original Lender a first priority security interest in real estate located at 5 Hampton Court, Caldwell New Jersey 07066. The Mortgage was recorded as Instrument No. 000005075671, at Book 10492 Page 816 in the county recorder's office of Essex County, New Jersey.

10. On or about February 26, 2011, Original Lender assigned the Mortgage to the Bank of New York Mellon Trust Company (the "Secured Creditor").

11. BAC Home Loans Servicing, LP ("BofA"), now known as Bank of America, N.A., was the previous servicer for the mortgage loan at issue. Defendant Nationstar Mortgage, LLC ("Nationstar") succeeded BofA as the servicer of the mortgage on or about July 1, 2013, until being replaced by Shellpoint Mortgage Services, Inc. On December 19, 2018 BSC Financial Services is slated to become the servicer of this mortgage.

12. On November 23, 2010, Plaintiffs filed a joint petition for relief under Chapter 13 of the Bankruptcy Code (the "filing date"). Plaintiffs' Chapter 13 repayment plan (the "Plan") was confirmed by Court Order entered on March 31, 2011 and contemplated a 100% distribution to creditors.

13. Pursuant to the terms of their Plan, Plaintiffs paid sixty consecutive monthly payments to the Chapter 13 Trustee (the "Trustee"), and completed their Chapter 13 repayment plan obligations with a final payment on or about November 15, 2015 and they received an Order of Discharge on or about June 3, 2016.

14. Approximately one year after the filing date, Plaintiffs applied for participation in BofA's mortgage modification program by complying with its continuing and voluminous document requests.

15. By letter dated May 30, 2013, BofA informed Plaintiffs that they were approved to enter into BofA's Trial Payment Plan (the "TPP") for mortgage modification. The BofA TPP required Plaintiffs to make three (3) TPP payments for the months of July, August and September 2013, each in the amount of $6,887.83. Plaintiffs made each of the aforementioned TPP payments on a timely basis.

16. By separate letter also dated May 30, 2013, BofA informed Plaintiffs that the escrow portion of their monthly payments was to increase from $1,567.18

3

to $1,761.41 effective July 1, 2013. This letter also stated that the principal balance was $674,393.99.

17. By letter dated June 11, 2013, BofA informed Plaintiffs that "the servicing of [their] home loan had been transferred to Nationstar Mortgage LLC on July 01, 2013." This notice indicated that "if you are currently being considered for a loan modification . . ., your new servicer Nationstar Mortgage is aware of your current status and will have all of your documents."

18. By letter dated July 11, 2013, Nationstar informed Plaintiffs' counsel that it had "recently acquired" the Mortgage.

19. By letter dated July 12, 2013, Nationstar informed Plaintiffs that "Nationstar Mortgage is now the servicer for your mortgage account." This notice conflicted with the aforementioned July 11, 2013 notice from Nationstar, in which it indicated that it had "acquired" the Mortgage.

20. By letter dated July 31, 2013, Nationstar gave Plaintiffs contact information for their designated "Single Point of Contact", Naynay Russ ("Ms. Russ"). This letter stated that Ms. Russ would "answer any further questions regarding [their) loan status or possible assistance."

21. For the next five months, Mr. Jacobs called and (sometimes) faxed Ms. Russ, but Ms. Russ never returned any of his calls or messages. However, Mr. Jacobs did receive one telephone call from an unidentified agent or employee of Nationstar who verbally confirmed that Nationstar "would honor the mortgage modification agreed to by BofA".

22. It was not until October 2013 when Mr. Jacobs was finally able to get in contact with an individual named Justin Harmel, an employee and/or agent of

4

Nationstar. Mr. Harmel further informed Mr. Jacobs that Nationstar would be sending a mortgage modification agreement (the "Modification Agreement") to him in the near future.

23. On November 12, 2013, Plaintiffs received a Letter of Acknowledgment from Nationstar enclosing the Modification Agreement. This letter stated in pertinent part that:

> "[b]y executing this Letter of Acknowledgment and the Modification Agreement, [Plaintiffs] are agreeing to make a qualifying payment of $0.00 for your Modification Agreement to become effective."

24. As the Plaintiffs were about to execute the Letter of Acknowledgment, Mr. Jacobs discovered that the Modification Agreement overstated the principal balance of the Mortgage by $35,429.04 to the incorrect amount of $709,823.03. This overstated unpaid principal balance flatly contradicted the $674,393.99 contained in BofA's March 30, 2013 letter without mention of its receipt of any of the three TPP payments.

25. Because of the error in the principal balance due, Plaintiffs did not execute or return the Modification Agreement to Nationstar. But after receiving the conflicting and incorrect documentation from Nationstar, Mr. Jacobs attempted to contact Ms. Russ in order to discuss the Modification Agreement and the discrepancies contained therein. Once again, Mr. Jacobs did not receive a response from Ms. Russ.

26. By email dated November 13, 2013, Mr. Jacobs advised Mr. Harmel that although he had received Nationstar's Modification Agreement, the unpaid principal balance contained therein had inexplicably been increased from $674,393.99 to $709,823.03. Mr. Jacobs further advised that timely and increased amounts of

mortgage payments constituting the Trial Payment Plan required by BofA had been paid for July, August and September 3013, and that he was ready, willing and able to continue making monthly payments. Lastly, Mr. Jacobs requested that Nationstar provide him with an updated Modification Agreement based on a corrected unpaid principal balance.

27. Mr. Jacobs did not receive a response from Nationstar to his November 13, 2013 email.

28. In or about December 2013, after many unanswered telephone calls from Nationstar, Mr. Jacobs managed to speak with another Nationstar employee and/or agent. During this conversation, Nationstar's employee and/or agent advised him that Nationstar was in the process of preparing a revised and corrected Modification Agreement, and that Nationstar would defer the next payment due until it delivered the revised and corrected Modification Agreement to Plaintiffs. Despite these assurances, Mr. Jacobs never received a further response of any kind from Nationstar.

29. By certified letter and facsimile dated January 3, 2014, Mr. Jacobs again contacted Ms. Russ and emphasized his frustration with Nationstar's lack of communication, its failure to correct the overstated unpaid principal balance and to send him a revised Modification Agreement as promised. Mr. Jacobs also attached a copy of his November 13, 2013 email to Mr. Harmel for Ms. Russ's review. Mr. Jacobs did not receive any form of response to his January 3, 2014 certified letter or facsimile sent to Ms. Russ at Nationstar.

30. Despite Nationstar's failure to respond, Plaintiffs continued making payments of principal and interest to Nationstar based on their own calculations as

to the correct and agreed interest rate and resulting payments due. Shortly thereafter, due to Nationstar's continuing failure to respond, Plaintiffs increased these payments to account for payment of property taxes, and directly paid the home insurance carrier.

31. Plaintiffs continued to regularly make these monthly mortgage payments until early 2014.

32. In March 2014, due in large measure to the stress caused by Nationstar's default in responding and failure to correct the Modification Agreement as agreed, Mr. Jacobs suffered a heart attack and underwent emergency open heart surgery at Morristown Memorial Hospital. He was hospitalized for approximately two (2) weeks, and was unable to operate a motor vehicle or return to employment until the end of June 2014. As a result, Plaintiffs were only able to make intermittent payments to Nationstar for several months.

33. Although Nationstar continued to cash Plaintiffs' mailed payment checks, it never once sent the them a bill, statement of account, notice or response of any kind to their numerous inquiries. Mr. Jacobs attempted to go online to the Nationstar website but was not permitted to access his account or make any electronic payments.

34. In an effort to finally elicit a response from Nationstar, on or about April 9, 2014, Mr. Jacobs filed a complaint with the State of New Jersey Department of Banking & Insurance (the "Banking Department").

35. By letter dated April 16, 2014, the Banking Department advised Mr. Jacobs that it had received his complaint, and that its investigative staff would contact Nationstar to request a complete response to the issues he had raised.

7

36. Notwithstanding the foregoing, Mr. Jacobs did not receive any communication from Nationstar regarding the monthly mortgage payments made and/or missed, its promised revision of the overstated unpaid principal balance due on the Mortgage, or a revised Modification Agreement. Thus, Plaintiffs have no way of knowing the exact monthly mortgage payments due, the amounts credited and/or deferred by Nationstar, or the correct unpaid principal balance due on the Mortgage.

## COUNT ONE
### (Breach of Contract)

37. Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 37 of this Complaint.

38. The May 30, 2013 TPP was an offer by BofA to modify Plaintiffs' 2005 Note and Mortgage forming the basis for this action.

39. Plaintiffs accepted BofA's offer.

40. Plaintiffs complied with all requirements necessary to accept BofA's offer to modify the terms of the 2005 Note and Mortgage, including without limitation: timely making the three (3) required TPP payments to Nationstar for the months of July, August and September of 2013.

41. Plaintiffs' acceptance of BofA's offer formed a binding contract (the "May 30, 2013 contract").

42. By offering the TPP, BofA had a duty to honor its terms and to provide Plaintiffs with a Permanent Modification pursuant to same.

43. Nationstar, as successor to BofA, is obligated to honor the terms of the TPP and to provide Plaintiffs with a Permanent Modification pursuant to same.

8

44. Nationstar breached its duty to Plaintiffs under the May 30, 2013 contract by grossly overstating the unpaid principal balance, failing to correct the unpaid principal balance despite being duly notified of its error and refusing to provide the revised Permanent Modification as promised.

45. Plaintiffs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from him that he would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to his credit making obtaining of credit difficult, additional harm and unnecessary fees to his mortgage balance, causing him to expend funds to defend a potential additional foreclosure action, and causing him to expend funds related to medical treatment.

46. As a proximate result of Nationstar's conduct Mr. Jacobs suffered non-economic damages including without limitation: suffering a heart attack requiring medical intervention, an unsafe increase in his blood pressure, anxiety, stress, fear of losing his home, lack of sleep, and inability to focus.

47. Mrs. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from her that she would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to her credit making obtaining of credit difficult, additional harm and unnecessary fees to her mortgage balance and causing her to expend funds to defend a potential additional foreclosure action.

48. As a proximate result of Nationstar's conduct Mrs. Jacobs suffered non-economic damages including, without limitation: anxiety, stress, fear of losing her home, lack of sleep, and inability to focus.

**WHEREFORE,** Plaintiffs demand entry of judgment against Nationstar as follows:

A. Requiring Nationstar to provide Plaintiffs with a revised permanent mortgage modification pursuant to the terms of the May 30, 2013 contract;

B. For compensatory and consequential damages;

C. For attorneys' fees and costs of suit; and

D. For such other and further relief as this Court deems just and proper.

## COUNT TWO
### (Good Faith and Fair Dealing)

49. Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 48 of this Complaint.

50. Both the initial mortgage documents and the May 30, 2013 contract imposed a duty of good faith and fair dealing on Nationstar.

51. Nationstar breached its duty to Plaintiffs by grossly overstating the unpaid principal balance in the Modification Agreement, repeatedly and continually refusing in bad faith to communicate with Plaintiffs after being put on notice of its error(s) and failing to correct those error(s)

52. Nationstar denied Plaintiffs the benefit of the bargain originally intended by the parties by intentionally stringing out the modification process, forcing them to incur costs and then ultimately failing to issue a revised Modification Agreement as promised.

53. Mr. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from him that he would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to his credit making obtaining of credit difficult, additional harm and unnecessary fees to his mortgage balance, causing him to expend funds to defend a potential additional foreclosure action, and causing him to expend funds related to medical treatment.

54. As a proximate result of Nationstar's conduct Mr. Jacobs suffered non-economic damages including without limitation: heart attack requiring medical intervention, unsafe increase in his blood pressure, anxiety, stress, fear of losing his home, lack of sleep, and inability to focus.

55. Mrs. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including, without limitation: loss of the benefit of the modification agreement, extracting money from her that she would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to her credit making obtaining credit difficult, additional harm and unnecessary fees to her mortgage balance, and causing her to expend funds to defend a potential additional foreclosure action.

56. As a direct and proximate result of Nationstar's conduct, Mrs. Jacobs suffered non-economic damages including, without limitation: anxiety, stress, fear of losing her home, lack of sleep, and inability to focus.

**WHEREFORE,** Plaintiffs demand entry of a judgment against Nationstar as follows:

A. Requiring Nationstar to perform its obligations under the May 30,

2013 contract and issue a permanent mortgage modification in accordance with same;

B.    For compensatory and consequential damages;

C.    For attorneys' fees and costs of suit; and

D.    For such other and further relief as this Court deems just and proper.

## COUNT THREE
### (New Jersey Consumer Fraud Act)

57.    Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 56 of this Complaint.

58.    Plaintiffs and Nationstar are "persons" as that term is defined in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (the "CFA").

59.    Plaintiffs' relationship with Nationstar arose out of a "consumer transaction" as that term is defined in the CFA.

60.    Nationstar violated the CFA by engaging in unconscionable, unfair and deceptive commercial practices, misrepresentations and fraud, including but not limited to that described in detail in the preceding paragraphs, and summarized as follows:

    A. Participating in a mortgage modification program but failing to honestly or effectively implement it;

    B. Refusing to honor the terms of the May 30, 2013 contract to permanently modify Plaintiffs' mortgage despite their successful completion and fulfillment of all requirements and/or obligations pursuant to the TPP;

    C. Unjustifiably and unreasonably inflating the unpaid principal balance;

    D. Unjustifiably and unreasonably failing to communicate with Plaintiffs after being notified of its errors.

    E. Unjustifiably, unreasonably and repeatedly refusing to reply to Plaintiffs' inquiries, whether they were by telephone, email, facsimile, certified mail or otherwise;

    F. Extracting and/or attempting to extract money from Plaintiffs that they would not have paid absent the TPP; and

    G. Filing a motion for relief from the automatic stay to permit foreclosure despite the May 30, 2013 contract to permanently modify Plaintiffs' mortgage.

61. Plaintiffs suffered economic damages as a proximate result of Nationstar's misconduct including without limitation: loss of the benefit of the modification agreement, extracting money from them that they would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to their credit making obtaining of credit difficult, additional harm and unnecessary fees to their mortgage balance, causing them to expend funds to prosecute the within action, and causing them to expend funds related to medical treatment.

**WHEREFORE,** Plaintiffs demand entry of a judgment against Nationstar as follows:

    A.    For compensatory and consequential damages;

    B.    For treble damages;

    C.    For attorneys' fees and costs of suit; and

    D.    For such other and further relief as this Court deems just and proper.

## COUNT FOUR
### (Violation of Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. §2601, et seq.)

62. Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 61 of this Complaint.

63. In a letter addressed to Nationstar dated January 3, 2014, Mr. Jacobs questioned Nationstar's calculation of the balance due on his mortgage and his monthly payment, "especially Nationstar's miscalculation of the balance due." In the same letter Mr. Jacobs informed Nationstar that he was unable to access his account online to make a payment, and that in the absence of receiving a monthly statement from Nationstar he was "mailing yet another estimated payment (for December) in the estimated amount of $4,500." Mr. Jacobs concluded the letter by requesting Nationstar to provide him with corrected "Loan Modification documents and corrected monthly payment with calculations immediately." Nationstar received this correspondence on January 3, 2014 as confirmed by the telefax transmission report.

64. Due to Nationstar's failure to respond to Mr. Jacobs January 3, 2014 letter, on April 4, 2014 Mr. Jacobs filed a complaint with the State of New Jersey Department of Banking and Insurance in an effort to solicit Nationstar's response.

65. Mr. Jacobs' letter of January 3, 2014 contained the necessary components to be considered a qualified written request ("QWR") pursuant to RESPA.

66. Nationstar failed to acknowledge receipt of the QWR within five business days as required by RESPA.

67. Nationstar failed to investigate the issues and concerns raised by Mr. Jacobs in his January 3, 2014 correspondence, and failed to provide a written notice

either that his account was being corrected or a written notice of the reasons Nationstar believed the account was correct as required by RESPA.

68. As a direct and proximate result of Nationstar's actions, Plaintiffs have suffered economic and emotional damages, including but not limited to a damaged credit rating that resulted in frustrating Plaintiffs' efforts to refinance their mortgage, loss of equity in their property, stress, embarrassment, and humiliation.

**WHEREFORE**, Plaintiffs entry of a judgment against Nationstar as follows:

A.  For actual damages;

B.  For statutory damages permissible under 12 U.S.C. §2605(f);

C.  For attorneys' fees and costs of suit; and

D.  For such other and further relief as this Court deems just and proper.

### COUNT FIVE
### (Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1962 et seq.)

68. Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 67 of this Complaint.

69. Plaintiffs are natural persons allegedly obligated to pay a debt making them "consumers" pursuant to 15 U.S.C. §1692a(3).

70. The note and mortgage serviced by Nationstar are an obligation of the "consumer" Plaintiffs to pay for property that is primarily for personal and family purposes making it a debt pursuant to 15 U.S.C. §1692a(5).

71. Nationstar regularly collects or attempts to collect debts due another and uses the mails in a business principal purpose of which is the collection of any debts making Nationstar a "debt collector" as defined by 15 U.S.C. §1692a(6). Given the fact that Nationstar became the loan servicer effective July 1, 2013, which is after Plaintiffs

had defaulted on their note and mortgage and in the course of the Plaintiffs' subsequent Chapter 13 bankruptcy case, Nationstar is not subject to the exemptions for original creditors and mortgage servicers as the debt was in default at the time it was obtained by Nationstar.

72. Nationstar has misrepresented the legal status of this debt, has threatened to take action that cannot legally be taken, used false representations to collect the debt, and has attempted to collect amounts not expressly authorized by agreement or permitted by law in violation of 15 U.S.C. §§1692e and 1692f.

73. Mr. Jacobs' January 3, 2014 letter represents a dispute of a portion of the alleged debt claimed by Nationstar under the note and mortgage. Nationstar failed to provide verification of the debt in response to the January 3, 2014 letter, but continued to send additional collection letters and make additional collection demands, including its relief from stay motion filed with the Bankruptcy Court on February 17, 2016, all in violation of 15 U.S.C. §1692g.

74. As a direct and proximate result of Nationwide's actions, Plaintiffs have suffered economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in their property, a damaged credit rating which frustrated their efforts to refinance the note and mortgage, stress, embarrassment and humiliation.

**WHEREFORE**, Plaintiffs request entry of a judgment against Nationstar as follows:

A. For actual damages pursuant to 15 U.S.C. §1692k;

B. For statutory damages at Plaintiffs' election pursuant to 15 U.S.C. §1692k(a)(2);

C. For attorneys' fees and costs of suit; and

D. For such other and further relief as this Court deems just and proper.

## COUNT SIX
### (Violation of Fair Credit Report Act, 15 U.S.C. §1681, et seq.)

75. Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 74 of this Complaint.

76. Nationstar is a "person" as defined in 15 U.S.C. §1681a.

77. Upon information and belief, Nationstar regularly and in the ordinary course of its business operations furnishes information to one or more consumer reporting agencies about the consumer loans that it services.

78. Each of the Plaintiffs is a "consumer" as defined in 15 U.S.C. §1681a.

79. As of July 1, 2013, which is when Nationstar represents having taken over the servicing and management of Plaintiffs' mortgage loan, Nationstar acted as a furnisher of information to consumer reporting agencies concerning Plaintiffs' mortgage loan. Thus, pursuant to 15 U.S.C. §1681s-2, Nationstar was prohibited from furnishing any information relating to Plaintiffs' mortgage loan to any consumer reporting agency if Nationstar knew or had reasonable cause to believe that the information is inaccurate.

80. Further, Nationstar was prohibited from furnishing information about the status of Plaintiffs' mortgage loan to any consumer reporting agency once Mr. Jacobs notified Nationstar on January 3, 2014, at the address where he was directed to send notice, that the loan balance reflected in Nationstar's proposed loan modification agreement presented to Mr. Jacobs in November 2013 was inaccurate.

81. Notwithstanding Nationstar ignoring Mr. Jacobs' written demand issued to on January 3, 2014 to provide him with a proper loan modification agreement

containing correct figures, Plaintiffs tendered numerous mortgage payments to Nationstar from 2014 to 2018 based on Mr. Jacobs' estimate of what his monthly payment would be had Nationstar honored the terms of the TPP, which included reducing the interest rate from 6.75% to 5.5%. Nationstar accepted these payments.

82. Plaintiffs made several attempts to refinance the loan after Nationstar became their loan servicer. Initially, Plaintiffs received approval from Quicken's "Rocket Mortgage" program to refinance the entire balance claimed by Nationstar at 3.99% interest rate. However, Quicken added substantial additional charges and costs to be paid at closing of which Plaintiffs had not been previously advised. In order to pay such additional costs and charges, the Plaintiffs obtained a "homeowner's line of credit" (the "HELOC") from Citizen's Bank (in South New Jersey) in the amount of $75,000 and were prepared to use the funds in the HELOC to pay Quicken's additional fees in order to get rid of Nationstar as their mortgagee.

83. However, after some further inquiries, another private funding company agreed to refinance the Nationstar mortgage without any "hidden" closing costs and fees. Specifically, in March 2018 Plaintiffs made application to refinance their mortgage loan with Bond Street Mortgage LLC, a mortgage broker based in Paramus, New Jersey.

84. With the assistance of Bond Street Mortgage LLC, Plaintiffs received preliminary approval for a refinance loan in the principal amount of $679,650 at 4.25% and were preparing to close on the refinancing as soon as Nationstar responded to Bond Street's standard request for payment history.

85. According to a Supplemental Report prepared by Universal Credit Services, on April 18, 2018 for Nationstar, Nationstar reported the status of Plaintiffs'

18

mortgage loan to consumer reporting agencies as "still due for 11/1/15." In other words, on April 18, 2018 Nationstar falsely reported that Plaintiffs had not paid their Nationstar mortgage *since November 1, 2015*, when in fact Plaintiffs had made numerous payments to Nationstar throughout 2014 to 2018 notwithstanding Nationstar's incorrect balance calculation and failure to respond to all objections.

86.   The information furnished by Nationstar to consumer reporting agencies on April 18, 2018 was inaccurate, and Nationwide had reasonable cause to know that such information was inaccurate because of Mr. Jacobs' prior letter issued to Nationstar on January 3, 2014 demanding a corrected loan modification agreement with accurate calculations.

87.   Notwithstanding Mr. Jacobs' repeated requests to provide him with a loan modification agreement containing an accurate loan balance, Nationstar deliberately and knowingly furnished consumer reporting agencies with inaccurate information about the payment status of Plaintiffs' loan while at the same time refusing to honor the terms of the TPP as promised by the prior loan servicer BofA.

88.   The aforesaid actions by Nationstar violate 15 U.S.C. §1681s-2(a)(1)(A) and (B).

89.   In addition, Nationstar's failure to correct and update its inaccurate furnishing of information to credit reporting agencies as to the payment status of Plaintiffs' mortgage loan violates 15 U.S.C. §1682s-2(a)(2)

90.   As a direct and proximate result of Nationstar's reporting of inaccurate information about the status of Plaintiffs' mortgage loan to consumer reporting agencies, and its failure to update these inaccuracies when requested by Plaintiffs,

Bond Street Mortgage, LLC. refused to close on Plaintiffs' otherwise approved refinancing.

**WHEREFORE**, Plaintiffs request entry of a judgment against Nationstar as follows:

A. Statutory damages, including punitive damages, pursuant to 15 U.S.C. §1681n(a) and (b);

B. For attorney's fees pursuant to 15 U.S.C. §1681n(c);

C. Actual damages together with attorney's fees and costs of suit pursuant to 15 U.S.C. §1681o(a).

D. For such other and further relief as this Court deems just and proper.

LoFaro & Reiser, L.L.P.
Attorneys for Plaintiffs


By: /s/ Glenn R. Reiser
Glenn R. Reiser

Dated: June 27, 2019