LoFaro & Reiser, L.L.P.
(Glenn R. Reiser)
20 Court Street
Hackensack, New Jersey 07601
(201) 498-0400
Attorneys for Plaintiffs

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>RANDALL S. D. JACOBS and<br>JILL W. JACOBS,<br><br>    Debtors, | CHAPTER 13<br><br>Case No.: 10-46222-RG |
| RANDALL S. D. JACOBS and<br>JILL W. JACOBS,<br><br>    Plaintiffs,<br><br>Vs.<br><br>NATIONSTAR MORTGAGE, LLC d/b/a MR. COOPER, and SERVICE ONE, INC. d/b/a BSI FINANCIAL SERVICES, as servicing agent for US Bank Trust, NA, as Trustee of the Cabana Series III Trust,<br><br>    Defendants. | Adv. Pro. No.: 16-01528-RG<br><br>**SECOND AMENDED ADVERSARY COMPLAINT** |

   Plaintiffs, Randall Jacobs and Jill Jacobs (collectively "Plaintiffs"), by way of Complaint against Defendant say as follows:

## **PARTIES**

   1.  Plaintiff Randall S.D. Jacobs ("Mr. Jacobs") is a Debtor in this joint Chapter 13 matter residing at 5 Hampton Court, Caldwell, New Jersey 07066.

   2.  Plaintiff Jill Jacobs ("Mrs. Jacobs") is a Debtor in this joint Chapter 13 matter also residing at 5 Hampton Court, Caldwell, New Jersey 07066.

3.      Defendant Nationstar Mortgage, LLC is a business organization having offices located at 8950 Cypress Waters Boulevard, Dallas, Texas 75019.

4.      Defendant, Service One, Inc. d/b/a BSI Financial Services, as servicing agent for US Bank Trust, N.A., as Trustee of the Cabana Series III Trust (hereinafter collectively referred to as "BSI Financial"), is a mortgage servicer with its headquarters located at 1425 Greenway Drive, Suite 400, Irving, Texas.

## JURISDICTION AND VENUE

5.      On November 23, 2010, Plaintiffs filed a voluntary joint petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

6.      This Court has subject matter jurisdiction over this adversary proceeding and has personal jurisdiction over the Debtors pursuant to 28 U.S.C. §157 and §1334.

7.      This adversary proceeding is a core proceeding arising under 11 U.S.C. §101 et. Seq. and 28 U.S.C. §157(b)(2)(A) and (O).

8.      Venue is proper in this district pursuant to 11 U.S.C. §1409.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9.      On May 13, 2005, Plaintiffs borrowed $750,000.00 from Wilmington Finance, Inc., a division of AIG Federal Savings Bank (the "Original Lender") pursuant to a 30-year fixed interest rate promissory note bearing an initial interest rate of 6.75% (the "Note"). The monthly principal and interest payment was $4,764.49.

10.      To secure repayment of the Note, Plaintiffs executed a Mortgage (the "Mortgage") granting Original Lender a first priority security interest in real estate located at 5 Hampton Court, Caldwell New Jersey 07066. The Mortgage was recorded as Instrument No. 000005075671, at Book 10492 Page 816 in the county recorder's office of Essex County, New Jersey.

11.     On or about February 26, 2011 the Original Lender assigned the Mortgage to the Bank of New York Mellon Trust Company (the "Secured Creditor").

12.     BAC Home Loans Servicing, LP ("BofA"), now known as Bank of America, N.A., was the previous servicer for the mortgage loan at issue.  Defendant Nationstar Mortgage, LLC ("Nationstar") succeeded BofA as the servicer of the mortgage on or about July 1, 2013, until being replaced by Shellpoint Mortgage Services, Inc. ("Shellpoint").

13.      Upon information and belief, on or about December 19, 2018 BSI Financial succeeded Shellpoint as the servicer of this Mortgage.

14.     On November 23, 2010, Plaintiffs filed a joint petition for relief under Chapter 13 of the Bankruptcy Code (the "filing date").  Plaintiffs' Chapter 13 repayment plan (the "Plan") was confirmed by Court Order entered on March 31, 2011 and contemplated a 100% distribution to creditors.

15.     Pursuant to the terms of their Plan, Plaintiffs paid sixty consecutive monthly payments to the Chapter 13 Trustee (the "Trustee"), and completed their Chapter 13 repayment plan obligations with a final payment on or about November 15, 2015 and they received an Order of Discharge on or about June 3, 2016.

16.     Approximately one year after the filing date, Plaintiffs applied for participation in BofA's mortgage modification program by complying with its continuing and voluminous document requests.

17.     By letter dated May 30, 2013, BofA informed Plaintiffs that they were approved to enter into BofA's Trial Payment Plan (the "TPP") for mortgage modification. The BofA TPP required Plaintiffs to make three (3) TPP payments for the months of July, August and September 2013, each in the amount of $6,887.83.  Plaintiffs made each of the aforementioned TPP payments on a timely basis.

3

18.     By separate letter also dated May 30, 2013, BofA informed Plaintiffs that the escrow portion of their monthly payments was to increase from $1,567.18 to $1,761.41 effective July 1, 2013.   This letter also stated that the principal balance was $674,393.99.

19.     By letter dated June 11, 2013, BofA informed Plaintiffs that "the servicing of [their] home loan had been transferred to Nationstar Mortgage LLC on July 01, 2013."   This notice indicated that "if you are currently being considered for a loan modification . . ., your new servicer Nationstar Mortgage is aware of your current status and will have all of your documents."

20.     By letter dated July 11, 2013, Nationstar informed Plaintiffs' counsel that it had "recently acquired" the Mortgage.

21.     By letter dated July 12, 2013, Nationstar informed Plaintiffs that "Nationstar Mortgage is now the servicer for your mortgage account." This notice conflicted with the aforementioned July 11, 2013 notice from Nationstar, in which it indicated that it had "acquired" the Mortgage.

22.     By letter dated July 31, 2013, Nationstar gave Plaintiffs contact information for their designated "Single Point of Contact", Naynay Russ ("Ms. Russ"). This letter stated that Ms. Russ would "answer any further questions regarding [their] loan status or possible assistance."

23.     For the next five months, Mr. Jacobs called and (sometimes) faxed Ms. Russ, but Ms. Russ never returned any of his calls or messages. However, Mr. Jacobs did receive one telephone call from an unidentified agent or employee of Nationstar who verbally confirmed that Nationstar "would honor the mortgage modification agreed to by BofA".

24.    It was not until October 2013 when Mr. Jacobs was finally able to get in contact with an individual named Justin Harmel, an employee and/or agent of Nationstar.  Mr. Harmel further informed Mr. Jacobs that Nationstar would be sending a mortgage modification agreement (the "Modification Agreement") to him in the near future.

25.    On November 12, 2013, Plaintiffs received a Letter of Acknowledgment from Nationstar enclosing the Modification Agreement.  This letter stated in pertinent part that:

> "[b]y executing this Letter of Acknowledgment and the Modification Agreement, [Plaintiffs] are agreeing to make a qualifying payment of $0.00 for your Modification Agreement to become effective."

26.    As the Plaintiffs were about to execute the Letter of Acknowledgment, Mr. Jacobs discovered that the Modification Agreement overstated the principal balance of the Mortgage by $35,429.04 to the incorrect amount of $709,823.03.  This overstated unpaid principal balance flatly contradicted the $674,393.99 contained in BofA's March 30, 2013 letter without mention of its receipt of any of the three TPP payments.

27.    Because of the error in the principal balance due, Plaintiffs did not execute or return the Modification Agreement to Nationstar.  But after receiving the conflicting and incorrect documentation from Nationstar, Mr. Jacobs attempted to contact Ms. Russ in order to discuss the Modification Agreement and the discrepancies contained therein. Once again, Mr. Jacobs did not receive a response from Ms. Russ.

28.    By email dated November 13, 2013, Mr. Jacobs advised Mr. Harmel that although he had received Nationstar's Modification Agreement, the unpaid principal balance contained therein had inexplicably been increased from $674,393.99 to $709,823.03. Mr. Jacobs further advised that timely and increased amounts of mortgage payments constituting the Trial Payment Plan required by BofA had been

paid for July, August and September 2013, and that he was ready, willing and able to continue making monthly payments. Lastly, Mr. Jacobs requested that Nationstar provide him with an updated Modification Agreement based on a corrected unpaid principal balance.

29.   Mr. Jacobs did not receive a response from Nationstar to his November 13, 2013 email.

30.   In or about December 2013, after many unanswered telephone calls from Nationstar, Mr. Jacobs managed to speak with another Nationstar employee and/or agent.  During this conversation, Nationstar's employee and/or agent advised him that Nationstar was in the process of preparing a revised and corrected Modification Agreement, and that Nationstar would defer the next payment due until it delivered the revised and corrected Modification Agreement to Plaintiffs.   Despite these assurances, Mr. Jacobs never received a further response of any kind from Nationstar.

31.   By certified letter and facsimile dated January 3, 2014, Mr. Jacobs again contacted Ms. Russ and emphasized his frustration with Nationstar's lack of communication, its failure to correct the overstated unpaid principal balance and to send him a revised Modification Agreement as promised. Mr. Jacobs also attached a copy of his November 13, 2013 email to Mr. Harmel for Ms. Russ's review.  Mr. Jacobs did not receive any form of response to his January 3, 2014 certified letter or facsimile sent to Ms. Russ at Nationstar.

32.   Despite Nationstar's failure to respond, Plaintiffs continued making payments of principal and interest to Nationstar based on their own calculations as to the correct and agreed interest rate and resulting payments due.   Shortly thereafter, due to Nationstar's continuing failure to respond, Plaintiffs increased these payments to account for payment of property taxes, and directly paid the home insurance carrier as

6

they had been doing for years  Plaintiffs continued to regularly make these monthly mortgage payments until early 2014.

33.    In March 2014, due in large measure to the stress caused by Nationstar's default in responding and failure to correct the Modification Agreement as agreed, Mr. Jacobs suffered a heart attack and underwent emergency open heart surgery at Morristown Memorial Hospital. He was hospitalized for approximately two (2) weeks, and was unable to operate a motor vehicle or return to employment until the end of June 2014. As a result, Plaintiffs were only able to make intermittent payments to Nationstar for several months.

34.    Although Nationstar continued to cash Plaintiffs' mailed payment checks, it never once sent the them a bill, statement of account, notice or response of any kind to their numerous inquiries. Mr. Jacobs attempted to go online to the Nationstar website but was not permitted to access his account or make any electronic payments.

35.    In an effort to finally elicit a response from Nationstar, on or about April 9, 2014, Mr. Jacobs filed a complaint with the State of New Jersey Department of Banking & Insurance (the "Banking Department").

36.    By letter dated April 16, 2014, the Banking Department advised Mr. Jacobs that it had received his complaint, and that its investigative staff would contact Nationstar to request a complete response to the issues he had raised.

37.    Notwithstanding the foregoing, Mr. Jacobs did not receive any communication from Nationstar regarding the monthly mortgage payments made and/or missed, its promised revision of the overstated unpaid principal balance due on the Mortgage, or a revised Modification Agreement.  Thus, Plaintiffs have no way of knowing the exact monthly mortgage payments due, the amounts credited and/or deferred by Nationstar, or the correct unpaid principal balance due on the Mortgage.

7

38.     On April 11, 2019 the Clerk of the Court marked the Plaintiffs' Chapter 13 case closed.

39.     On or about April 18, 2019, BSI Financial filed a Transfer of Claim Other Than For Security ("Claim Transfer Notice") with the Clerk of the Bankruptcy Court, identifying itself as the transferee of the proof of claim submitted by Shellpoint on August 6, 2013 with respect to Plaintiffs' Mortgage loan.

40.     BSI Financial assumed the servicing of Plaintiffs' Mortgage loan with actual notice of the defects and improprieties committed by their predecessors Nationstar and Shellpoint.

41.     On May 29, 2019, just more than a month after BSI Financial filed the Claim Transfer Notice with the Bankruptcy Court, BSI Financial entered into a Consent Order with the United States Bureau of Consumer Financial Protection ("U.S. Consumer Protection Bureau") stemming from its numerous violations of the Consumer Financial Protection Act of 2010 and the Real Estate Settlement Procedures Act. Specifically, the U.S. Consumer Protection Bureau found that BSI Financial violated these federal laws by:

   a.   Handling mortgage servicing transfers with incomplete or inaccurate loss mitigation information. This resulted in failures to recognize transferred mortgage loans with pending loss mitigation applications, in-process loan modifications, and permanent loan modifications;

   b.   Handling mortgage servicing transfers with incomplete or inaccurate escrow information resulting in untimely escrow disbursements;

   c.   Inadequately overseeing service providers, resulting in untimely escrow disbursements to pay borrowers' property taxes and homeowners' insurance premiums;

   d.   Failing to promptly enter interest rate adjustment loan data for adjustable rate mortgage (ARM) loans into its servicing system, resulting in BSI sending monthly statements to consumers that sought to collect inaccurate principal and interest payments; and

8

    e.    Maintaining an inadequate document management system that prevented BSI's personnel or consumers from readily obtaining accurate information about mortgage loans.

42.    Pursuant to the aforementioned Consent Order, BSI Financial agreed to pay a civil penalty of $200,000 plus restitution estimated to be $36,500, and are required to establish and maintain a comprehensive data integrity program to ensure the accuracy, integrity, and completeness of the data for loans that it services.

43.    Since receiving notice of the transfer of their Mortgage loan account to BSI Financial, Plaintiffs have sent monthly mortgage payments to BSI Financial beginning in January 2019 and continuing each month thereafter based on the amount that they would have paid had Nationstar honored the terms of the TPP and Modification Agreement originally approved by BoFA.

44.    Further, since receiving notice of the transfer of their Mortgage loan account to BSI Financial, Plaintiffs have made numerous attempts to communicate with BSI Financial about resolving the disputes concerning their Mortgage account. However, these requests have been met with BSI Financial either providing unsatisfactory responses that continue to rely on the same improper loan account records maintained by their predecessors Nationstar and Shellpoint, or providing no response at all.

45.    The aforementioned conduct by BSI Financial violates the terms of the Consent Order which it entered with the U.S. Consumer Protection Bureau.

### COUNT ONE
**(Breach of Contract)**

46.    Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 45 of this Complaint.

47.    The May 30, 2013 TPP was an offer by BofA to modify Plaintiffs' 2005 Note and Mortgage forming the basis for this action.

48.    Plaintiffs accepted BofA's offer.

49.    Plaintiffs complied with all requirements necessary to accept BofA's offer to modify the terms of the 2005 Note and Mortgage, including without limitation: timely making the three (3) required TPP payments to Nationstar for the months of July, August and September of 2013.

50.    Plaintiffs' acceptance of BofA's offer formed a binding contract (the "May 30, 2013 contract").

51.    By offering the TPP, BofA had a duty to honor its terms and to provide Plaintiffs with a Permanent Modification pursuant to same.

52.    Nationstar and now BSI Financial, as successors to BofA, are obligated to honor the terms of the TPP and to provide Plaintiffs with a Permanent Modification pursuant to same.

53.    Nationstar breached its duty to Plaintiffs under the May 30, 2013 contract by grossly overstating the unpaid principal balance, failing to correct the unpaid principal balance despite being duly notified of its error and refusing to provide the revised Permanent Modification as promised.

54.    Since taking over the servicing of Plaintiffs' Mortgage account, BSI Financial has continued to rely upon Nationstar's faulty accounting by overstating the unpaid principal balance, failing to correct the unpaid principal balance despite being on actual notice of Plaintiffs' lawsuit and claims, causing Plaintiffs' real estate taxes to become delinquent, double billing Plaintiffs for homeowners' insurance despite that Plaintiffs regularly have maintained insurance coverage on their home

throughout the duration of the loan, and refusing to provide Plaintiffs with the Permanent Modification.

55.    Plaintiffs suffered economic damages as a proximate result of Nationstar's conduct, which wrongful conduct has been continued by BSI Financial, including without limitation: loss of the benefit of the modification agreement, extracting money from him that he would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to their credit making obtaining of credit difficult, additional harm and unnecessary fees to their mortgage balance, causing them to expend funds to defend a potential additional foreclosure action, and causing them to expend funds related to Mr. Jacobs' medical treatment.

56.    As a proximate result of Nationstar's conduct Mr. Jacobs suffered non-economic damages including without limitation: suffering a heart attack requiring medical intervention, an unsafe increase in his blood pressure, anxiety, stress, fear of losing his home, lack of sleep, and inability to focus.

57.    As a proximate result of Nationstar's wrongful conduct Mrs. Jacobs suffered non-economic damages including, without limitation: anxiety, stress, fear of losing her home, lack of sleep, and inability to focus.

**WHEREFORE,** Plaintiffs demand entry of judgment against Nationstar and BSI Financial as follows:

A.    Compelling the delivery of a revised permanent mortgage modification pursuant to the terms of the May 30, 2013 contract;

B.    Fixing the amount the proof of claim filed by Shellpoint and transferred to BSI Financial;

C.    Fixing the amount due on the Note and Mortgage;

D.    For compensatory and consequential damages;

11

E.     For attorneys' fees and costs of suit; and

F.     For such other and further relief as this Court deems just and proper.

**COUNT TWO**
**(Good Faith and Fair Dealing)**

58.     Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 57 of this Complaint.

59.     Both the initial mortgage documents and the May 30, 2013 contract imposed a duty of good faith and fair dealing on Nationstar.

60.     Nationstar breached its duty to Plaintiffs by grossly overstating the unpaid principal balance in the Modification Agreement, repeatedly and continually refusing in bad faith to communicate with Plaintiffs after being put on notice of its error(s) and failing to correct those error(s)

61.     Nationstar denied Plaintiffs the benefit of the bargain originally intended by the parties by intentionally stringing out the modification process, forcing them to incur costs and then ultimately failing to issue a revised Modification Agreement as promised.

62.     Mr. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including without limitation: loss of the benefit of the modification agreement, extracting money from him that he would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to his credit making obtaining of credit difficult, additional harm and unnecessary fees to his mortgage balance, causing him to expend funds to defend a potential additional foreclosure action, and causing him to expend funds related to medical treatment.

63.     As a proximate result of Nationstar's conduct Mr. Jacobs suffered non-economic damages including without limitation:  heart attack requiring medical

12

intervention, unsafe increase in his blood pressure, anxiety, stress, fear of losing his home, lack of sleep, and inability to focus.

64.     Mrs. Jacobs suffered economic damages as a proximate result of Nationstar's conduct including, without limitation: loss of the benefit of the modification agreement, extracting money from her that she would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to her credit making obtaining credit difficult, additional harm and unnecessary fees to her mortgage balance, and causing her to expend funds to defend a potential additional foreclosure action.

65.     As a direct and proximate result of Nationstar's conduct, Mrs. Jacobs suffered non-economic damages including, without limitation:  anxiety, stress, fear of losing her home, lack of sleep, and inability to focus.

66.     BSI Financial, as the successor to Nationstar, is charged with the duty to ensure that the information which it received from Nationstar about Plaintiffs' Mortgage loan account is truthful and accurate, especially considering that it assumed the servicing of Plaintiffs' Mortgage account in the midst of this litigation and with actual knowledge of the Plaintiffs' claims against its predecessor Nationstar.

67.     Upon information and belief, BSI Financial has failed to conduct any due diligence investigation of the records for Plaintiffs' Mortgage loan account maintained by the prior mortgage servicers Nationstar and Shellpoint Mortgage loan, by relying on incomplete or inaccurate loss mitigation information and loan history.

**WHEREFORE,** Plaintiffs  demand entry of a judgment against Nationstar and BSI Financial as follows:

A.     Compelling the delivery of a permanent mortgage modification in accordance with same;

13

B.    Fixing the amount the proof of claim filed by Shellpoint and transferred to BSI Financial;

C.    Fixing the amount due on the Note and Mortgage;

D.    For compensatory and consequential damages;

E.    For attorneys' fees and costs of suit; and

F.    For such other and further relief as this Court deems just and proper.

<u>**COUNT THREE**</u>
**(Improper Loan Servicing and Misrepresentation)**

68.    Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 67 of this Complaint.

69.    At all times, Nationstar and BSI Financial, as servicers of Plaintiffs' Mortgage loan account, owe Plaintiffs a duty of care to properly service their Mortgage loan account.   These duties include, but are not limited to, accepting and recording mortgage payments; computing interest; computing payoffs and amounts due when requested by the borrower or other third parties; reviewing records on borrower accounts received from prior servicers to ensure accuracy; maintaining  proper records of borrower loan accounts; payment of taxes and insurance from borrower escrow accounts; negotiations of workouts and modifications of mortgage upon default; and conducting or supervising the foreclosure process when necessary.

70.    As a servicer of Plaintiffs' Mortgage loan Nationstar breach its duties to Plaintiff by virtue of the following acts and omissions:  (i) failure to ever send Plaintiffs an invoice or statement of account; (ii) an unexplained substantial increase in the balance claimed due on Plaintiffs' mortgage loan account; (iii) charging Plaintiffs a higher interest rate than agreed; (iv) failure to credit payments made by Plaintiffs; (v) falsely reporting to credit bureaus that Plaintiffs' mortgage account had not been paid

in three years thereby preventing Plaintiffs from refinancing their Mortgage; (vi) double charging Plaintiffs for homeowner's insurance notwithstanding that Plaintiffs have always maintained coverage; (vii) filing motions and sworn statements in the Bankruptcy Court predicated on false and/or inaccurate records of Plaintiffs' Mortgage loan account; and (viii) failing to implement a loan modification agreement offered by the prior loan servicer BofA, which Plaintiffs accepted.

71.     Upon BSI Financial assuming the servicing of Plaintiffs' Mortgage loan from Nationstar in the midst of this lawsuit, BSI Financial owed Plaintiffs a duty to ensure that the records of its Mortgage loan account maintained by prior servicers, including Nationstar and Shellpoint Mortgage, were accurate.

72.     BSI Financial assumed the servicing of Plaintiffs' Mortgage loan and accepted the transfer of the prior proof of claim filed by Shellpoint Mortgage, with actual knowledge of the claims that Plaintiff is asserting against Nationstar in this lawsuit, and actual knowledge of the genuine issues of material fact that this Court previously determined as precluding Nationstar from obtaining summary judgment as to the amount owed on Plaintiffs' Mortgage loan.

73.     Further, at the time BSI Financial assumed the servicing of Plaintiffs' Mortgage loan and accepted the transfer of the prior proof of claim filed by Shellpoint Mortgage, BSI Financial was on actual notice of the reasons why this Court previously denied Nationstar relief from the automatic stay back in 2016.

74.     Notwithstanding the foregoing, BSI Financial breached its duty of care to Plaintiffs by failing to undertake a due diligence investigation of the records that it received from the prior loan servicers, including Plaintiffs' opposition to Nationstar's prior summary judgment motion which this Court determined creates genuine issues of material fact, such as whether Plaintiffs are entitled to enforce a permanent loan

15

modification reached with BofA and accepted by Nationstar. Instead, BSI Financial has continued to advance the inaccurate records from the prior loan servicers as a basis for obtaining relief from the automatic stay.

75.    The foregoing actions and inactions by Nationstar and BSI Financial constitute a breach of their duty to properly service Plaintiffs' Mortgage loan account.

76.    The foregoing actions and inactions by Nationstar and BSI Financial constitute misrepresentation.

77.    As a direct and proximate result of the foregoing acts and omissions by Nationstar, which remain ongoing, the Plaintiffs have been damaged.

**WHEREFORE,** Plaintiffs demand entry of a judgment against Nationstar and BSI Financial as follows:

A.    For compensatory and consequential damages;

E.    For attorneys' fees and costs of suit; and

F.    For such other and further relief as this Court deems just and proper.

## COUNT FOUR
### (New Jersey Consumer Fraud Act)

78.    Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 77 of this Complaint.

79.    Plaintiffs, Nationstar and BSI Financial are each "persons" as that term is defined in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (the "CFA").

80.    Plaintiffs' relationship with Nationstar arose out of a "consumer transaction" as that term is defined in the CFA.

81.    Likewise, Plaintiffs' relationship with BSI Financial arose out of a consume transaction as that term is defined in the CFA.

16

82.    Nationstar violated the CFA by engaging in unconscionable, unfair and deceptive commercial practices, misrepresentations and fraud, including but not limited to that described in detail in the preceding paragraphs, and summarized as follows:

A.    Participating in a mortgage modification program but failing to honestly or effectively implement it;

B.    Refusing to honor the terms of the May 30, 2013 contract to permanently modify Plaintiffs' mortgage despite their successful completion and fulfillment of all requirements and/or obligations pursuant to the TPP;

C.    Unjustifiably and unreasonably inflating the unpaid principal balance;

D.    Unjustifiably and unreasonably failing to communicate with Plaintiffs after being notified of its errors.

E.    Unjustifiably, unreasonably and repeatedly refusing to reply to Plaintiffs' inquiries, whether they were by telephone, email, facsimile, certified mail or otherwise;

F.    Extracting and/or attempting to extract money from Plaintiffs that they would not have paid absent the TPP; and

G.    Filing a motion for relief from the automatic stay to permit foreclosure despite the May 30, 2013 contract to permanently modify Plaintiffs' mortgage.

83.    Likewise, BSI Financial has violated the CFA by knowingly and purposely relying on inaccurate, incomplete and erroneous information about Plaintiffs' Mortgage account that it acquired from Nationstar, as evidenced by BSI Financial's recent filing of a relief from stay motion predicated on the faulty recordkeeping practices of its

predecessor Nationstar.  These wrongful actions by BSI Financial further constitute unconscionable, unfair and deceptive commercial practices, misrepresentations and fraud.

84.    Plaintiffs suffered economic damages as a proximate result of Nationstar's and BSI Financial's misconduct including without limitation: loss of the benefit of the modification agreement, extracting money from them that they would not otherwise have paid absent the TPP, increased and unnecessary arrears, harm to their credit making obtaining of credit difficult, additional harm and unnecessary fees to their mortgage balance, causing them to expend funds to prosecute the within action, and causing them to expend funds related to medical treatment.

**WHEREFORE,** Plaintiffs demand entry of a judgment against Nationstar and BSI Financial as follows:

A.    For compensatory and consequential damages;

B.    Fixing the amount the proof of claim filed by Shellpoint and transferred to BSI Financial;

C.    Fixing the amount due on the Note and Mortgage;

D.    For treble damages;

E.    For attorneys' fees and costs of suit; and

D.    For such other and further relief as this Court deems just and proper.

### COUNT FIVE
### (Violation of Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. §2601, et seq.)

85.    Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 84 of this Complaint.

86.    In a letter addressed to Nationstar dated January 3, 2014, Mr. Jacobs questioned Nationstar's calculation of the balance due on his mortgage and his

monthly payment, "especially Nationstar's miscalculation of the balance due."  In the same letter Mr. Jacobs informed Nationstar that he was unable to access his account online to make a payment, and that in the absence of receiving a monthly statement from Nationstar he was "mailing yet another estimated payment (for December) in the estimated amount of $4,500."  Mr. Jacobs concluded the letter by requesting Nationstar to provide him with corrected "Loan Modification documents and corrected monthly payment with calculations immediately."  Nationstar received this correspondence on January 3, 2014 as confirmed by the telefax transmission report.

87.     Due to Nationstar's failure to respond to Mr. Jacobs January 3, 2014 letter, on April 4, 2014 Mr. Jacobs filed a complaint with the State of New Jersey Department of Banking and Insurance in an effort to solicit Nationstar's response.

88.     Mr. Jacobs' letter of January 3, 2014 contained the necessary components to be considered a qualified written request ("QWR") pursuant to RESPA.

89.     Nationstar failed to acknowledge receipt of the QWR within five business days as required by RESPA.

90.     Nationstar failed to investigate the issues and concerns raised by Mr. Jacobs in his January 3, 2014 correspondence, and failed to provide a written notice either that his account was being corrected or a written notice of the reasons Nationstar believed the account was correct as required by RESPA.

91.     After receiving notice that BSI Financial was servicing his Mortgage loan account, Mr. Jacobs sent BSI Financial a Qualified Written Request dated March 1, 2019 disputing the accuracy of the most recent mortgage statement he received from BSI Financial, and further requesting, among other actions, that BSI Financial conduct its own independent investigation and audit of his Mortgage account without merely relying on the records maintained by the prior loan servicers.

92.    Although BSI Financial responded to Mr. Jacobs' Qualified Written Request by letter dated May 1, 2019, it elected only to provide selective documentation that it deemed necessary to validate the debt while choosing to deliberately withhold addressing the balance of Mr. Jacobs' informational requests under the guise that it constituted a "litigation demand and should be requested within ongoing litigation activity."

93.    Thereafter, BSI Financial proceeded to file a relief from stay motion predicated on the same faulty records maintained by Nationstar even though the Bankruptcy Court had previously denied Nationstar's motion for summary judgment, finding there are numerous genuine issues of material fact regarding the amount that its predecessor Nationstar claimed was due and owing on Plaintiffs' Mortgage account at that time.  BSI Financial filed the relief from stay motion in bad faith and with the intent to avoid ever having to respond to the balance of Mr. Jacobs' Qualified Written Request.

94.    As a direct and proximate result of Nationstar's and BSI Financial's wrongful actions, Plaintiffs have suffered economic and emotional damages, including but not limited to a damaged credit rating that resulted in frustrating Plaintiffs' efforts to refinance their mortgage, loss of equity in their property, stress, embarrassment, and humiliation.

**WHEREFORE**, Plaintiffs requests entry of a judgment against Nationstar and BSI Financial as follows:

A.    For actual damages;

B.    For statutory damages permissible under 12 U.S.C. §2605(f);

C.    For attorneys' fees and costs of suit; and

D.    For such other and further relief as this Court deems just and proper.

## COUNT SIX
### (Violation of the Fair Debt Collection Practices Act
### ("FDCPA"), 15 U.S.C. §1962 et seq.)

95.     Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 94 of this Complaint.

96.     Plaintiffs are natural persons allegedly obligated to pay a debt making them "consumers" pursuant to 15 U.S.C. §1692a(3).

97.     The note and mortgage serviced by Nationstar, and now BSI Financial, are an obligation of the "consumer" Plaintiffs to pay for property that is primarily for personal and family purposes making it a debt pursuant to 15 U.S.C. §1692a(5).

98.     Nationstar and BSI Financial regularly collect or attempt to collect debts due another and uses the mails in a business principal purpose of which is the collection of any debts making both Nationstar and BSI Financial a "debt collector" as defined by 15 U.S.C. §1692a(6).  Given the fact that both Nationstar and BSI Financial became the loan servicer after Plaintiffs had defaulted on their Note and Mortgage and in the course of the Plaintiffs' subsequent Chapter 13 bankruptcy case, neither Nationstar nor BSI Financial are not subject to the exemptions for original creditors and mortgage servicers as the debt was in default at the time it was obtained by these defendants.

99.     Nationstar and BSI Financial have each misrepresented the legal status of this debt, has threatened to take action that cannot legally be taken, used false representations to collect the debt, and has attempted to collect amounts not expressly authorized by agreement or permitted by law in violation of 15 U.S.C. §§1692e and 1692f.

100.    Mr. Jacobs' January 3, 2014 letter represents a dispute of a portion of the alleged debt claimed by Nationstar under the note and mortgage.  Nationstar failed to

provide verification of the debt in response to the January 3, 2014 letter, but continued to send additional collection letters and make additional collection demands, including its relief from stay motion filed with the Bankruptcy Court on February 17, 2016, all in violation of 15 U.S.C. §1692g.

101.   As a direct and proximate result of Nationstar's wrongful actions, which BSI Financial has continued, Plaintiffs have suffered economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in their property, a damaged credit rating which frustrated their efforts to refinance the note and mortgage, stress, embarrassment and humiliation.

**WHEREFORE**, Plaintiffs request entry of a judgment against Nationstar and BSI Financial as follows:

A.   For actual damages pursuant to 15 U.S.C. §1692k;

B.   For statutory damages at Plaintiffs' election pursuant to 15 U.S.C. §1692k(a)(2);

C.   For attorneys' fees and costs of suit; and

D.   For such other and further relief as this Court deems just and proper.

### COUNT SEVEN
### (Violation of Fair Credit Report Act, 15 U.S.C. §1681, et seq.)

102.   Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 92 of this Complaint.

103.   Nationstar is a "person" as defined in 15 U.S.C. §1681a.

104.   Upon information and belief, Nationstar regularly and in the ordinary course of its business operations furnishes information to one or more consumer reporting agencies about the consumer loans that it services.

105.    Each of the Plaintiffs is a "consumer" as defined in 15 U.S.C. §1681a.

106.    As of July 1, 2013, which is when Nationstar represents having assumed the servicing and management of Plaintiffs' mortgage loan, Nationstar acted as a furnisher of information to consumer reporting agencies concerning Plaintiffs' mortgage loan.  Thus, pursuant to 15 U.S.C. §1681s-2, Nationstar was prohibited from furnishing any information relating to Plaintiffs' mortgage loan to any consumer reporting agency if Nationstar knew or had reasonable cause to believe that the information is inaccurate.

107.    Further, Nationstar was prohibited from furnishing information about the status of Plaintiffs' mortgage loan to any consumer reporting agency once Mr. Jacobs notified Nationstar on January 3, 2014, at the address where he was directed to send notice, that the loan balance reflected in Nationstar's proposed loan modification agreement presented to Mr. Jacobs in November 2013 was inaccurate.

108.    Notwithstanding Nationstar ignoring Mr. Jacobs' written demand issued to on January 3, 2014 to provide him with a proper loan modification agreement containing correct figures, Plaintiffs tendered numerous mortgage payments to Nationstar from 2014 to 2018 based on Mr. Jacobs' estimate of what his monthly payment would be had Nationstar honored the terms of the TPP, which included reducing the interest rate from 6.75% to 5.5%.  Nationstar accepted these payments without protest or comment.

109.    Plaintiffs made several attempts to refinance the loan after Nationstar became their loan servicer. Initially, Plaintiffs received approval from Quicken's "Rocket Mortgage" program to refinance the entire balance claimed by Nationstar at 3.99% interest rate. However, Quicken added substantial additional charges and costs to be paid at closing of which Plaintiffs had not been previously advised. In order to pay such

23

additional costs and charges, the Plaintiffs obtained a "homeowner's line of credit" (the "HELOC") from Citizen's Bank (in South New Jersey) in the amount of $75,000 and were prepared to use the funds in the HELOC to pay Quicken's additional  fees in order to get rid themselves of Nationstar as their mortgagee.

110.    However, after some further inquiries, another private funding company agreed to refinance the Nationstar mortgage without any "hidden" closing costs and fees. Specifically, in March 2018 Plaintiffs made application to refinance their mortgage loan with Bond Street Mortgage LLC, a mortgage broker based in Paramus, New Jersey.

111.    With the assistance of Bond Street Mortgage LLC, Plaintiffs received preliminary approval  for a refinance loan in the principal amount of $679,650 at 4.25% and were preparing to close on the refinancing as soon as Nationstar responded to Bond Street's standard request for payment history.

112.    According to a Supplemental Report prepared by Universal Credit Services, on April 18, 2018 for Nationstar, Nationstar reported the status of Plaintiffs' mortgage loan to consumer reporting agencies as "still due for 11/1/15."   In other words, on April 18, 2018 Nationstar falsely reported that Plaintiffs had not paid their Nationstar mortgage *since November 1, 2015*, when in fact Plaintiffs had made numerous payments to Nationstar throughout 2014 to 2018 notwithstanding Nationstar's incorrect balance calculation and failure to respond to all objections.

113.    The information furnished by Nationstar to consumer reporting agencies on April 18, 2018 was inaccurate, and Nationwide had reasonable cause to know that such information was inaccurate because of Mr. Jacobs' prior letter issued to Nationstar on January 3, 2014 demanding a corrected loan modification agreement with accurate calculations.

114.    Notwithstanding Mr. Jacobs' repeated requests to provide him with a loan modification agreement containing an accurate loan balance, Nationstar deliberately and knowingly furnished consumer reporting agencies with inaccurate information about the payment status of Plaintiffs' loan while at the same time refusing to honor the terms of the TPP as promised by the prior loan servicer BofA.

115.    The aforesaid actions by Nationstar violate 15 U.S.C. §1681s-2(a)(1)(A) and (B).

116.    In addition, Nationstar's failure to correct and update its inaccurate furnishing of information to credit reporting agencies as to the payment status of Plaintiffs' mortgage loan violates 15 U.S.C. §1682s-2(a)(2)

117.    As a direct and proximate result of Nationstar's reporting of inaccurate information about the status of Plaintiffs' mortgage loan to consumer reporting agencies, and its failure to update these inaccuracies when requested by Plaintiffs, Bond Street Mortgage, LLC refused to close on Plaintiffs' otherwise approved refinancing.

**WHEREFORE**, Plaintiffs request entry of a judgment against Nationstar as follows:

A.    Statutory damages, including punitive damages, pursuant to 15 U.S.C. §1681n(a) and (b);

B.    For attorney's fees pursuant to 15 U.S.C. §1681n(c);

C.    Actual damages together with attorney's fees and costs of suit pursuant to 15 U.S.C. §1681o(a).

D.

For such other and further relief as this Court deems just and proper.

LoFaro & Reiser, L.L.P.
Attorneys for Plaintiffs


By: /s/ Glenn R. Reiser
　　　Glenn R. Reiser

Dated:  September 17, 2019