

**Attorneys**
John P. Fazzio, III **
John J. Boulton *
Zoltan Simon, II +

**Legal Professionals**
Caitlin  Gibbons  #
Melissa Pasquariella-Stefano ¶
Michele Luongo ¢

**KEY**
** Also Member of NY & PA
. Member of NY Only
* Member of NJ Only

**KEY**
# Chief Operating Officer
¶ Paralegal
¢ Billing Coordinator

**Hoboken Office**
5 Marine View Plaza
Ste. 218
Hoboken, NJ 07030

**New York Office**
305 Broadway
7th Floor, Suite 19
New York, NY 10007

PLEASE SEND ALL
CORRESPONDENCE
TO HOBOKEN ADDRESS

P: (201) 529-8024
F: (201) 529-8011
www.fazziolaw.com

May 19, 2023

**VIA ECF FILING**
The Honorable Rosemary Gambardella
50 Walnut Street, 3rd Floor
Newark, NJ 07102
Courtroom 3E

> RE:    **Randall Jacobs and Jill Jacobs v. Nationstar Mortgage, LLC**
> **Adv. Pro. No.: 16-01528-RG**

Dear Judge Gambardella:

As you are aware, our offices represent Randall Jacobs and Jill Jacobs ("Jacobs" or "Borrowers") in regard to the above-referenced matter.  Please allow this correspondence to serve as a Status Letter from Debtor's Counsel in anticipation of the upcoming Oral Argument on Defendant's Motion to Dismiss, currently set for next Monday, May 22, 2023 at 11:00 a.m.

As an initial matter, the Motion to Dismiss and the Motion to Reopen the underlying Bankruptcy Case under Bankruptcy Docket 10-46222-RG, which is scheduled for June 6, 2023 at 10:00 a.m., should be heard together, because they concern the same subject matter.

Additionally, we are writing to draw the Court's attention to various documents that are part of the Court Record which are pertinent to the adjudication of both matters.  These documents clearly show that the amounts owed to Nationstar at the conclusion of the Chapter 13 Bankruptcy were severely inflated and that BSI booked the overstated principal balance, which BSI refuses to correct, due to Nationstar's various servicing errors, all of which entitle Borrowers to substantial damages in this Adversary Proceeding.  The pertinent documents can be found on the Docket as follows:

- **Dckt No.: 33** – June 30, 2011 Trustee's Report, Showing at Claim #003 that BAC Home Loans Servicing LP (predecessor to Nationstar) was for **$27,544.12**.
- **Dckt No.: 48** – Dec 31, 2012 Trustee's Report Showing **additional payments of $10,091.45** to BAC Home Loans Servicing LP (predecessor to Nationstar), which amounts were never applied to or credited to the account with Nationstar.  The claims by both parties are for the same loan and same debt.
- **Dckt No.: 57** – Jan 22, 2016 F.R.B.P. 3002.1(f) Final Cure Payment – wherein

Case 16-01528-RG    Doc 112    Filed 05/19/23    Entered 05/19/23 16:13:57    Desc Main
Document      Page 2 of 28

Trustee Marie-Ann Greenberg certifies that **all amounts due to Nationstar Mortgage, LLC under the Chapter 13 Plan "have been paid in full.**"

- **Dckt.: 58-2** – Mar 16, 2016 Certification by Nationstar Mortgage LLC that the **account is paid current**, including all pre-petition arrears of $27,544.12 being paid-in-full together with all post-petition payments due between July of 2011 and June of 2012 being paid-in-full, during the entire period Nationstar Mortgage LLC owned the subject loan.

- **Dckt No.: 59** – Chapter 13 Standing Trustee's Final Report and Account showing **Claim #003 for $27,544.12 by Nationstar Mortgage LLC was paid-in-full.**

- **Dckt No.: 77** – **[to the Bankruptcy Case 10-46222-RG]** – Notice of Transfer of Claim as of 11/1/18 wherein Shellpoint Mortgage Servicing/BSI Financial Services took over the subject loan with a claimed balance of $731,781.79 due and owing, a sum that does not include a credit for the $27,544.13 paid and confirmed by **Dckt No.: 59** and which otherwise overstates or inflates the unpaid principal balance owed for a number of additional reasons.

  o Please Note: The $37,635.57 of principal added by BSI Financial Services is the same $37,635.57 comprised of the $27,544.13 previously paid to Nationstar Mortgage LLC together with the $10,091.45 previously paid to BAC Home Loans Servicing LP. Nationstar made a severe servicing error and failed to credit these payments to the account and then ran interest at 6.75% on these sums for several years, generating $18,592.28 of additional interest, added to principal.

  o While all payments have been made monthly as required since the Chapter 13 Plan, resulting in Discharge, the amount BSI claims to be due now has grown by over an additional $300,000 to over $1,000,000 during the pendency of these proceedings, when on information and belief, the principal has been paid down over the last 4-5 years by approximately the same amount, leaving only between $400,000 and $500,000 actually due and owing. The delta in the amounts claimed to be owed and the amounts actually owed is ~$500,000. BSI Financial Services has tacitly admitted they are not owed the amounts claimed to be due which are greater than the $731,781.19 they most recently claimed to be correctly due in 2018, but BSI refuses to reduce the principal for the overstated amounts pre-dating transfer, for which Nationstar is accountable.

In response to Borrowers' claims that they are being charged for amounts that have already been paid in the underlying Bankruptcy or which were overstated and inflated on transfer and then for interest on these erroneous amounts due, Nationstar and BSI both claim, without basis, that there were tens of thousands of dollars of arrears both during and after the Bankruptcy Proceedings. As shown by the Court Record, this is demonstrably false and plainly not the case. Nationstar Mortgage, LLC itself certified in **Dckt. No.: 58-2** that there were **_no arrears_** on the account in 2016, a short time prior to the loan being transferred.

This letter also is written to draw the Court's attention to certain parallel litigation with Nationstar that has previously been adjudicated in this State, finding Nationstar to have committed the very same violations alleged in this Adversary Proceeding on a widespread basis throughout

the Country and requiring Nationstar to adhere to stringent "servicing standards" and to correct past errors that have harmed borrowers.

While the violations complained of in the Borrowers' Complaint are well documented in the Court Record, neither Nationstar (a party to the adversary proceeding) nor BSI (their successor-in-interest) has produced any documentation confirming or validating the amounts claimed to be due before, during or after the underlying Bankruptcy Proceedings. Neither party explains how all pre-petition and post-petition arrears were paid-in-full during the Bankruptcy, and Borrowers have continued making payments throughout this Adversary Proceeding, and yet, despite this, the unpaid principal balance has increased by hundreds of thousands of dollars.

Nationstar provided the loan to BSI, claiming substantial arrears were still due, including the $27,544.12 paid in the Bankruptcy Proceedings, together with an increased and erroneous interest rate—so that BSI now claims that despite uninterrupted monthly payments, an additional $300,000 balance has accrued on the loan, representing nearly 50% of the principal owed at the conclusion of the Bankruptcy Proceedings.

These discrepancies in the amount owed have never been corrected and have remained front and center throughout the pendency of this case. It would stand to reason that if records that validated the debt existed, Nationstar would produce them in order to put an end to this dispute. Instead, Nationstar, in particular, has gone all-in on the pending Motion to Dismiss, which would be the only procedure whereby it could avoid production of underlying records, solely within its possession, which would disprove the amounts it claims to be owed, and on which BSI relied in booking the loan's unpaid principal balance. These records would prove Borrower's entitlement to substantial damages of several hundred thousand dollars, at minimum, which Borrower's now ostensibly owe to BSI as a result of Nationstar's mishandling of the loan account.

In addition, neither Nationstar nor BSI has offered any explanation as to why the Borrowers' accepted loan modification was not honored.[1] While these matters can be fleshed out

---

[1] The failure to produce records validating the debt claimed to be owed or to correct inaccuracies in the Borrowers' account flies in the face of the 2020 Consent Order, in which Nationstar agreed to adhere to stringent "servicing standards" whereby it would: "**ensure the accuracy of information** it includes in foreclosure-related filings; **apply any borrower payments that exceed the amount due in accordance with the borrower's instructions**; **adopt more consumer-accessible procedures for handling billing disputes**, such as a toll-free number and email; **and take prompt action to remediate inaccuracies in borrowers' account information** – including correcting information provided to credit reporting agencies, and providing refunds or account credits where appropriate." https://www.njoag.gov/ag-grewal-announces-new-jerseys-participation-in-86-3-million-consumer-financial-protection-settlement-with-nationstar-mortgage/, last visited May 19, 2023. Far from taking its obligations under the Consent Order seriously in the case of the Jacobs's, Nationstar has instead stonewalled the Borrowers, refused to provide any documentation validating the debt claimed to be owed, and has engaged in a fundamental fraud wherein Nationstar knows their accounting of the loan in question and the failure to honor Borrowers' loan modification are indefensible, but seeks to avoid adjudication on the merits—for which they have no defense—by attempting to defeat the lawsuit on procedural grounds, putting form before substance. Nationstar says "we sold the loan, complain to BSI" and BSI says "we didn't own the loan when these violations occurred, you owe us an extra $300,000 despite paying over $6,000 every month before, during and after the Bankruptcy… if you have a problem with it, complaint to Nationstar." This "pass the buck" and fingers pointing opposite ways defense is the hallmark of mortgage servicing fraud in today's day and age. If a loan is fraudulent—don't fix it—just sell it—and hope the Borrowers lack the resources to fight back or deal with the procedural complexity foisted on someone already in dire financial straits. While the $90,000,000 Settlement by Consent Order sounds like a lot of money, it really isn't. Even

3

further in discovery, it is important to note that the documentation identifying discrepancies in the amounts claimed to be due have been a part of the Court Record throughout these proceedings and have gone unchallenged and unrebutted—but, account records from Nationstar and BSI do not line up, validate or substantiate the amounts claimed to be owed—and for that, no explanation is offered.

This case does not occur in a vacuum.  In 2020, Nationstar recently entered into a NINETY-MILLION ($90,000,000) DOLLAR Settlement Agreement with the CFPB, the DOJ and 53 Attorneys General (comprising all of the U.S. States and territories) for the same unlawful servicing practices at issue in this case, occurring during the same time period.  A CFPB press release, summarizes Nationstar's violations of the law as follows:

"Specifically, the Bureau alleges that between January 2012 and January 1, 2016, in numerous instances Nationstar **failed to identify loans on its systems that had pending loss-mitigation applications or trial-modification plans, and as a result failed to honor borrowers' loan modification agreements.**"

*Consumer Financial Protection Bureau and Multiple States Enter Into Settlement with Nationstar Mortgage, LLC for Unlawful Servicing Practices* (available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-multiple-states-enter-settlement-nationstar-mortgage-llc-unlawful-servicing-practices/, last visited May 19, 2023).  Nationstar took over Borrowers' loan from Bank of America on July 1, 2013, squarely in the middle of the relevant time period in which Nationstar's Unlawful Servicing Practices and consumer violations were in full swing.

Our then Attorney General, Grubir Grewal, also issued a Press Release concerning the Consent Judgment, in which he identified that Nationstar had: "fail[ed] to properly oversee and implement the transfer of mortgage loans… fail[ed] to appropriately identify loans with pending loan modification applications when a loan was being transferred to Nationstar for servicing… fail[ed] to timely and accurately apply payments made by certain borrowers… [charged borrowers] monthly modified payment amounts… [that exceeded] the trial plan agreement." https://www.njoag.gov/ag-grewal-announces-new-jerseys-participation-in-86-3-million-consumer-financial-protection-settlement-with-nationstar-mortgage/, last visited May 19, 2023.

As Attorney General Grewal noted in the Press Release, 2,075 New Jersey homeowners were identified who had been damaged by these practices of Nationstar, including the Borrowers in this case.  Id.

It is clear from the Court Record that a substantial injustice and a fundamental fraud is being perpetuated by Nationstar in this case.  BSI's claims are purely derivative of Nationstar

---

$90,000,000,000 would be a drop in the bucket.  Of the 2,705 New Jersey homeowners who were identified as having lost their homes to a foreclosure sale despite qualifying for and taking all necessary steps to properly modify their mortgage loan—the guaranteed payout to each was only $840. Id.  That is, Nationstar broke its contracts and evicted families from their homes wrongfully, without excuse or justification, despite the fact they had modified mortgages with a prior Servicer, exactly like they are trying to do to the Borrowers here, and then Nationstar entered into a Consent Order under which they didn't even pay the cost of a moving truck for each of these displaced families.

Mortgage LLC's rights.  Here, as pled in the Amended Complaint, Nationstar added $37,635.57 to the underlying principal and fumbled the loan modification by adding amounts that exceeded the trial plan agreement, failed to account for the $27,544.12 paid during the Bankruptcy Proceedings when transferring the loan, and has provided no documentation of the additional amounts that raised the balance owed from ~$674,939.99 owed in July of 2013 per contemporaneous BAC Home Loans statements just prior to Nationstar acquiring the loan to ~$731,781.19 in 2018 when Nationstar resold the loan to BSI, despite hundreds of thousands of dollars having been paid during the ensuing 5-years through the Trustee and then post-discharge.

The Docket Entries annexed hereto show there was clearly no unpaid debt or arrears owed when the Chapter 13 Plan was discharged.  The scant records produced by Nationstar ***do not*** show missed payments or arrearages that account for the discrepancies in the underlying principal balance.  Then, where did the additional $60,000+ claimed to be owed come from?  Where did the additional $300,000 owed on top of that by BSI come from?

These errors are not insignificant or trifling.  Adding tens of thousands of dollars to the principal on a loan and simultaneously failing to reduce the principal on a loan to credit payments actually made has a dramatic effect when interest payments are at 6.75% per annum.  For every $100,000 erroneously owed, an additional $6,750 of interest is accruing every year.  These amounts add up quickly, particularly in a case like this where the interest has been running at these rates for over a decade.

Given all of the foregoing, it is clear that a grave injustice has taken place that is severely prejudicing the Borrowers and resulting in hundreds of thousands of dollars of damages to boot. This matter requires full adjudication and a reopening of the underlying Bankruptcy Proceeding to ensure proper credits are given for all amounts paid under the supervision of the Bankruptcy Court and the Chapter 13 Standing Trustee and to correct the principal balance for the mortgage accounts at issue, which have been inflated dramatically due to servicing errors by Nationstar.

Thank you for your time and attention to this matter.

**FAZZIO LAW OFFICES**

/s/ John P. Fazzio
JOHN P. FAZZIO, ESQ.

*cc: Harold Kofman, Esq.*

Marie-Ann Greenberg, Trustee
30 TWO BRIDGES ROAD
SUITE 330
FAIRFIELD, NJ 07004-1550

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

### TRUSTEE'S REPORT OF RECEIPTS AND DISBURSEMENTS AS OF 6/30/2011

Chapter 13 Case # 10-46222

Re:   RANDALL S.D. JACOBS
      JILL W JACOBS
      5 HAMPTON COURT
      CALDWELL, NJ 07006

Atty:   MARK GOLDMAN, ESQ.
        MARK GOLDMAN, PC
        7 GLENWOOD AVE, SUITE 311B
        EAST ORANGE, NJ 07017

## RECEIPTS AS OF 06/30/2011    (Please Read Across)

| Date | Amount | Source Document No. | Date | Amount | Source Document No. |
|---|---|---|---|---|---|
| 02/08/2011 | $6,140.00 | 2058223 | 03/03/2011 | $6,022.00 | 2058486 |
| 03/23/2011 | $6,022.00 | 2221722 | 04/12/2011 | $6,022.00 | 2221768 |
| 05/18/2011 | $6,022.00 | 2221996 | 06/20/2011 | $6,453.00 | 2343202 |

Total Receipts: $36,681.00 - Amount Refunded to Debtor: $0.00 = Receipts Applied to Plan: $36,681.00

## LIST OF PAYMENTS TO CLAIMS AS OF 06/30/2011    (Please Read Across)

| Claimant Name | Date | Amount | Check # | Date | Amount | Check # |
|---|---|---|---|---|---|---|
| Marie-Ann Greenberg | 04/21/2011 | $1,054.67 | 626136 | 05/19/2011 | $285.32 | 627881 |
| | 06/23/2011 | $413.23 | 630180 | | | |
| STATE OF NJ | 06/23/2011 | $2,077.52 | 630670 | | | |
| UNITED STATES TREASURY/IRS | 04/21/2011 | $13,390.82 | 627807 | 05/19/2011 | $4,633.96 | 629478 |
| | 06/23/2011 | $4,633.96 | 631522 | | | |

## CLAIMS AND DISTRIBUTIONS

| Claim # | Claimant Name | Class | Allowed Claim | Percent to be Paid | Paid | Unpaid Balance * |
|---|---|---|---|---|---|---|
| TTE | TRUSTEE COMPENSATION | ADMIN | | | 1,753.22 | TBD |
| ATTY | ATTORNEY (S) FEES | ADMIN | 3,738.51 | 100.00% | 3,738.51 | 0.00 |
| COURT | CLERK OF COURT | ADMIN | 0.00 | 100.00% | 0.00 | 0.00 |
| 0001 | AMERICAN EXPRESS CENTURION BANK | UNSECURED | 902.99 | 100.00% | 0.00 | 902.99 |
| 0002 | AMERICAN EXPRESS CENTURION BANK | UNSECURED | 28,599.06 | 100.00% | 0.00 | 28,599.06 |
| 0003 | BAC HOME LOANS SERVICING LP | MORTGAGE ARREA | 27,544.12 | 100.00% | 0.00 | 27,544.12 |
| 0004 | BMW FINANCIAL SERVICES NA | VEHICLE SECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0006 | CHASE | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0008 | SALLIE MAE SERVICING | UNSECURED | 59,921.77 | 100.00% | 0.00 | 59,921.77 |
| 0011 | CITIBANK SOUTH DAKOTA NA | UNSECURED | 126.42 | 100.00% | 0.00 | 126.42 |
| 0013 | UNITED STATES TREASURY/IRS | SECURED | 70,377.87 | 100.00% | 0.00 | 70,377.87 |
| 0018 | UNITED STATES TREASURY/IRS | PRIORITY | 40,498.21 | 100.00% | 22,658.74 | 17,839.47 |

Page 1 of 2

Case 10-46222-RG   Doc 33   Filed 07/14/11   Entered 07/14/11 15:09:54   Desc Main
Document   Page 2 of 2

Chapter 13 Case # 10-46222

| Claim # | Claimant Name | Class | Allowed Claim | Percent to be Paid | Paid | Unpaid Balance * |
|---------|---------------|-------|---------------|--------------------|------|------------------|
| 0019 | UNITED STATES TREASURY/IRS | UNSECURED | 86,965.77 | 100.00% | 0.00 | 86,965.77 |
| 0023 | STATE OF NJ | PRIORITY | 6,076.47 | 100.00% | 2,077.52 | 3,998.95 |
| 0024 | AMERICAN EXPRESS | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0025 | AMERICAN EXPRESS | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0026 | SALLIE MAE SERVICING | UNSECURED | 51,850.98 | 100.00% | 0.00 | 51,850.98 |
| 0027 | STATE OF NJ | UNSECURED | 760.82 | 100.00% | 0.00 | 760.82 |

Total Paid:  $30,227.99
See Summary

## SUMMARY

Summary of all receipts and disbursements from the date the case was filed, to and including: July 13, 2011.

Receipts: $36,681.00        -     Paid to Claims: $24,736.26     -     Admin Costs Paid: $5,491.73     =     Funds on Hand: $6,453.01

**NOTE: THIS REPORT IS NOT TO BE USED AS A PAYOFF FIGURE.  ADDITIONAL ALLOWED CLAIMS AND OTHER VARIABLES MAY AFFECT THE AMOUNT TO COMPLETE THE PLAN.



Marie-Ann Greenberg, Trustee
30 TWO BRIDGES ROAD
SUITE 330
FAIRFIELD, NJ 07004-1550



Ex B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

### TRUSTEE'S REPORT OF RECEIPTS AND DISBURSEMENTS AS OF 12/31/2012

Chapter 13 Case # 10-46222

Re:   RANDALL S.D. JACOBS
      JILL W JACOBS
      5 HAMPTON COURT
      CALDWELL, NJ 07006

Atty:   MARK GOLDMAN, ESQ.
        MARK GOLDMAN, PC
        7 GLENWOOD AVE, SUITE 311B
        EAST ORANGE, NJ 07017

## RECEIPTS AS OF 12/31/2012    (Please Read Across)

| Date | Amount | Source Document No. | Date | Amount | Source Document No. |
|------|--------|---------------------|------|--------|---------------------|
| 02/08/2011 | $6,140.00 | 2058223 | 03/03/2011 | $6,022.00 | 2058486 |
| 03/23/2011 | $6,022.00 | 2221722 | 04/12/2011 | $6,022.00 | 2221768 |
| 05/18/2011 | $6,022.00 | 2221996 | 06/20/2011 | $6,453.00 | 2343202 |
| 08/03/2011 | $6,453.00 | 2343378 | 08/18/2011 | $11,064.00 | 2343335 |
| 09/28/2011 | $6,453.00 | 2438713 | 11/04/2011 | $6,453.00 | 2438821 |
| 11/29/2011 | $6,453.00 | 2438965 | 12/30/2011 | $6,453.00 | 2343473 |
| 02/08/2012 | $6,453.00 | 2494147 | 02/29/2012 | $6,453.00 | 2494173 |
| 04/04/2012 | $6,453.00 | 2494345 | 05/04/2012 | $6,453.00 | 2494464 |
| 06/04/2012 | $6,453.00 | 2494649 | 07/03/2012 | $6,453.00 | 2494852 |
| 08/07/2012 | $6,453.00 | 2494882 | 09/12/2012 | $6,453.00 | 2720606 |
| 10/09/2012 | $6,453.00 | 2720658 | 11/14/2012 | $6,453.00 | 2720764 |
| 12/05/2012 | $6,453.00 | 2720865 | | | |

Total Receipts: $150,993.00 - Amount Refunded to Debtor: $0.00 = Receipts Applied to Plan: $150,993.00

## LIST OF PAYMENTS TO CLAIMS AS OF 12/31/2012    (Please Read Across)

| Claimant Name | Date | Amount | Check # | Date | Amount | Check # |
|---------------|------|--------|---------|------|--------|---------|
| BAC HOME LOANS SERVICING LP | | | | | | |
| *$10,091.43* | 09/14/2011 | $208.53 | 636,399 | 10/19/2011 | $1,666.02 | 638,496 |
| | 09/07/2012 | $192.87 | 661,461 | 10/15/2012 | $1,435.81 | 663,756 |
| | 11/13/2012 | $1,697.16 | 666,000 | 12/17/2012 | $4,891.04 | 668,328 |
| INTERNAL REVENUE SERVICE | | | | | | |
| | 12/14/2011 | $5,141.86 | 642,632 | 01/18/2012 | $10,283.71 | 644,754 |
| | 02/14/2012 | $694.32 | 645,571 | 03/21/2012 | $11,049.48 | 648,996 |
| | 05/16/2012 | $4,856.29 | 653,039 | 06/18/2012 | $5,070.32 | 655,307 |
| | 07/16/2012 | $4,987.69 | 657,483 | 08/03/2012 | ($4,987.69) | 657,483 |

Chapter 13 Case # 10-46222    EZ



| Claimant Name | Date | Amount | Check # | | Date | Amount | Check # |
|---|---|---|---|---|---|---|---|
| Marie-Ann Greenberg | | | | | | | |
| | 04/21/2011 | $1,054.67 | 626,136 | | 05/19/2011 | $285.32 | 627,881 |
| | 06/23/2011 | $413.23 | 630,180 | | 07/20/2011 | $374.27 | 631,605 |
| | 09/14/2011 | $1,015.98 | 634,890 | | 10/19/2011 | $658.04 | 636,927 |
| | 12/14/2011 | $490.43 | 640,939 | | 01/18/2012 | $980.85 | 643,603 |
| | 02/14/2012 | $57.11 | 646,774 | | 03/21/2012 | $908.83 | 8,000,000 |
| | 05/16/2012 | $399.44 | 8,000,002 | | 06/18/2012 | $272.48 | 8,000,003 |
| | 07/16/2012 | $268.04 | 8,000,004 | | 09/07/2012 | $18.30 | 8,000,006 |
| | 10/15/2012 | $354.85 | 8,000,007 | | 11/13/2012 | $419.45 | 8,000,008 |
| | 12/17/2012 | $1,208.80 | 8,000,009 | | | | |
| STATE OF NJ | | | | | | | |
| | 06/23/2011 | $2,077.52 | 630,670 | | 07/20/2011 | $1,113.11 | 632,441 |
| | 09/14/2011 | $2,885.84 | 635,963 | | 10/05/2011 | ($2,077.52) | 630,670 |
| | 10/19/2011 | $2,077.52 | 638,062 | | | | |
| STATE OF NJ DIVISON OF TAXATION | | | | | | | |
| | 12/14/2011 | $820.72 | 641,868 | | 01/18/2012 | $1,641.44 | 643,946 |
| | 02/03/2012 | ($820.72) | 641,868 | | 03/07/2012 | ($1,641.44) | 643,946 |
| UNITED STATES TREASURY/IRS | | | | | | | |
| | 04/21/2011 | $13,390.82 | 627,807 | | 05/19/2011 | $4,633.96 | 629,478 |
| | 06/23/2011 | $4,633.96 | 631,522 | | 07/20/2011 | $4,965.63 | 633,095 |
| | 09/14/2011 | $532.81 | 636,834 | | 09/14/2011 | $12,873.84 | 636,834 |
| | 10/19/2011 | $4,256.85 | 638,949 | | 09/07/2012 | $492.81 | 661,961 |
| | 10/15/2012 | $3,668.63 | 664,291 | | 11/13/2012 | $4,336.40 | 666,481 |
| | 12/17/2012 | $12,497.07 | 668,825 | | | | |

## CLAIMS AND DISTRIBUTIONS

| Claim # | Claimant Name | Class | Allowed Claim | Percent to be Paid | Paid | Unpaid Balance * |
|---|---|---|---|---|---|---|
| TTE | TRUSTEE COMPENSATION | ADMIN | | | 8,581.61 | TBD |
| ATTY | ATTORNEY (S) FEES | ADMIN | 7,155.11 | 100.00% | 3,738.51 | |
| COURT | CLERK OF COURT | ADMIN | 0.00 | 100.00% | 0.00 | 3,416.60 |
| 0001 | AMERICAN EXPRESS CENTURION BANK | UNSECURED | 902.99 | 100.00% | 0.00 | 0.00 |
| 0002 | AMERICAN EXPRESS CENTURION BANK | UNSECURED | 28,599.06 | 100.00% | 0.00 | 902.99 |
| 0003 | BAC HOME LOANS SERVICING LP | MORTGAGE ARR | 27,544.12 | 100.00% | 10,091.43 | 28,599.06 |
| 0004 | BMW FINANCIAL SERVICES NA | VEHICLE SECURI | 0.00 | 100.00% | 0.00 | 17,452.69 ✓ |
| 0006 | CHASE | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0008 | VL FUNDING | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0011 | CITIBANK NA | UNSECURED | 126.42 | 100.00% | 0.00 | 0.00 |
| 0013 | UNITED STATES TREASURY/IRS | SECURED | 70,377.87 | 100.00% | 25,784.57 | 126.42 |
| 0018 | UNITED STATES TREASURY/IRS | PRIORITY | 40,498.21 | 100.00% | 40,498.21 | 44,593.30 |
| 0019 | UNITED STATES TREASURY/IRS | UNSECURED | 88,425.43 | 100.00% | 0.00 | 0.00 |
| 0023 | STATE OF NJ | PRIORITY | 6,076.47 | 100.00% | 6,076.47 | 88,425.43 |
| 0024 | AMERICAN EXPRESS | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0025 | AMERICAN EXPRESS | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0026 | SALLIE MAE PC TRUST | UNSECURED | 0.00 | 100.00% | 0.00 | 0.00 |
| 0027 | STATE OF NJ | UNSECURED | 760.82 | 100.00% | 0.00 | 0.00 |
| 0028 | INTERNAL REVENUE SERVICE | PRIORITY | 37,095.98 | 100.00% | 37,095.98 | 760.82 |
| 0029 | STATE OF NJ DIVISON OF TAXATION | PRIORITY | 8,300.00 | 100.00% | 0.00 | 0.00 |
| | | | | | | 8,300.00 |

Total Paid: $131,866.78
See Summary

Case 10-46222-RG    Doc 48    Filed 01/19/13    Entered 01/19/13 07:35:34    Desc Main
Document        Page 3 of 3

Chapter 13 Case # 10-46222        *E3*

## SUMMARY

Summary of all receipts and disbursements from the date the case was filed, to and including: January 11 , 2013.

Receipts: $150,993.00        -    Paid to Claims: $119,546.66    -    Admin Costs Paid: $12,320.12  =    Funds on Hand: $19,126.22

**NOTE:** THIS REPORT IS NOT TO BE USED AS A PAYOFF FIGURE.  ADDITIONAL ALLOWED CLAIMS AND OTHER VARIABLES MAY AFFECT THE AMOUNT TO COMPLETE THE PLAN.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re: | RANDALL JACOBS | Case No.: | 10-46222 |
|  | JILL JACOBS | Chapter: | 13 |
|  |  | Judge: | Judge Rosemary Gai |

*ExC*

## Notice of Final Cure Payment - Pursuant to F.R.B.P. 3002.1 (f)

### Part 1:  Claim Information

a.  Name of holder (or servicer) of claim secured by a security interest in the debtor's principal residence:

NATIONSTAR MORTGAGE LLC
PO BOX 619094
DALLAS, TX  75261-9741

b.  Proof of Claim Number on Court's Registry:                    3

c.  Trustee's Claim Number (if any):                              3

### Part 2:  Trustee Certification

I, Marie-Ann Greenberg, the chapter 13 trustee, hereby certify that all payments required to be paid through the Chapter 13 Plan for the benefit of the secured creditor named above, including pre-petition arrears and all other amounts due to be paid to the secured creditor through the Chapter 13 Plan which arose post-petition pursuant to Order or Modified Plan, have been paid in full to the secured creditor.  I further certify that on January 22, 2016 a copy of this notice was served on the debtor(s), debtor's attorney (if any) and the secured creditor at the address noted below.

### Part 3:  Signature

Signature _____                    Date: January 22, 2016

### Part 4:  Service

Notice Mailed to:

Debtor(s):

**RANDALL S.D. JACOBS
JILL W JACOBS
5 HAMPTON COURT
CALDWELL, NJ  07006**

Debtor(s)' Counsel:

**GOLDMAN & BESLOW, LLC served via CM/ECF**

Creditor (or Creditor's Counsel):

**NATIONSTAR MORTGAGE LLC
PO BOX 619094
DALLAS, TX  75261-9741**

---

**This Notice of Final Cure Payment informs the holder of the claim of its obligation to file
and serve a Response pursuant to F.R.P.B. 3002.1 (g).**

E + D

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

WEINSTEIN & RILEY, P.A.
Charles H. Jeanfreau, Esq.
260 West 36th Street, 8th Floor
New York, NY 10018
Phone: 212-268-5540
Fax: 646-478-9370
Email: charlesj@w-legal.com
Attorneys for Nationstar Mortgage LLC

In Re:

Randall Jacobs and Jill Jacobs
Debtors

| | |
|---|---|
| Case No.: | 10-46222-RG |
| Chapter: | 13 |
| Hearing Date: | March 16, 2016 |
| Judge: | Rosemary Gambardella |

**CERTIFICATION OF CREDITOR REGARDING POST PETITION PAYMENT HISTORY**
**( NOTE AND MORTGAGE DATED _____May 13, 2005_____ )**

Shemar Ursin_____, employed as __Assistant Secretary_____ by
_____Nationstar Mortgage LLC_____, hereby certifies the following:

Recorded on ___May 27, 2005___, in ___Essex___ County, in Book ___10492___ at Page ___816___

Property Address: 5 Hampton Court, Caldwell NJ 07066

Mortgage Holder: Nationstar Mortgage LLC

Mortgagor(s)/ Debtor(s): Randall Jacobs, Jill Jacobs

POST-PETITION PAYMENTS (Petition filed on _____November 22, 2010_____ )

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance | Comments | Applied (P&I and | Additional Escrow Applied | Fees/Costs/Corp Applied | Payment Suspense | Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/27/10 | $ 6,433.73 | | | $ 6,433.73 | | | | | $ 6,433.73 | $ 6,433.73 |
| 01/27/11 | $ 6,556.39 | 12/01/10 | $ 6,556.39 | $ 6,433.73 | | $ 6,556.39 | | | $ 0.00 | $ 6,433.73 |
| 01/27/11 | $ 6,311.07 | | | $ 12,744.80 | | | | | $ 6,311.07 | $ 12,744.80 |
| 01/27/11 | $ (6,433.73) | | | $ 6,311.07 | | | | | $ (6,433.73) | $ 6,311.07 |
| 03/30/11 | $ 6,473.77 | | | $ 12,784.84 | | | | | $ 6,473.77 | $ 12,784.84 |
| 05/13/11 | $ 6,473.77 | | | $ 19,258.61 | | | | | $ 6,473.77 | $ 19,258.61 |
| 06/13/11 | $ 6,473.77 | | | $ 25,732.38 | | | | | $ 6,473.77 | $ 25,732.38 |
| 07/08/11 | $ (6,420.10) | | | $ 19,312.28 | | | | | $ (6,420.10) | $ 19,312.28 |
| 07/08/11 | $ 6,420.10 | 01/01/11 | $ 6,556.39 | $ 19,175.99 | | $ 6,556.39 | $ (136.29) | | $ 0.00 | $ 19,312.28 |
| 07/08/11 | $ (6,420.10) | | | $ 12,755.89 | | | | | $ (6,420.10) | $ 12,892.18 |
| 07/08/11 | $ 6,420.10 | 02/01/11 | $ 6,556.39 | $ 12,619.60 | | $ 6,556.39 | $ (136.29) | | $ 0.00 | $ 12,892.18 |

C-1

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance | Comments | Applied (P&I and) | Additional Escrow Applied | Fees/Costs/Corp Applied | Payment Suspense | Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/08/11 | $(6,420.10) | | | $6,199.50 | | | | | $(6,420.10) | $6,472.08 |
| 07/08/11 | $6,420.10 | | | $12,619.60 | | $6,556.39 | $(136.29) | | $0.00 | $6,472.08 |
| 07/08/11 | $(6,420.10) | | | $6,199.50 | | | | | $(6,420.10) | $51.98 |
| 07/08/11 | $6,420.10 | 03/01/11 | $6,556.39 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 07/21/11 | $6,420.10 | 04/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 08/26/11 | $6,420.10 | 05/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 09/19/11 | $6,420.10 | 06/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 10/21/11 | $6,420.10 | 07/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 11/21/11 | $(6,420.10) | 06/01/11 | $(6,420.10) | $6,063.21 | | $(6,420.10) | | | $0.00 | $51.98 |
| 11/21/11 | $(6,420.10) | 05/01/11 | $(6,420.10) | $6,063.21 | | $(6,430.10) | | | $0.00 | $51.98 |
| 11/21/11 | $(6,420.10) | 04/01/11 | $(6,420.10) | $6,063.21 | | $(6,420.10) | | | $0.00 | $51.98 |
| 11/21/11 | $(6,420.10) | 03/01/11 | $(6,420.10) | $6,063.21 | | $(6,420.10) | | | $0.00 | $51.98 |
| 11/21/11 | $(6,420.10) | 02/01/11 | $(6,420.10) | $6,063.21 | | $(6,420.10) | | | $0.00 | $51.98 |
| 11/21/11 | $6,420.10 | 03/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 11/21/11 | $6,420.10 | 04/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 11/21/11 | $6,420.10 | 05/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 11/21/11 | $6,420.10 | 06/01/11 | $6,420.10 | $6,063.21 | | $6,420.10 | | | $0.00 | $51.98 |
| 11/21/11 | $- | | | $6,063.21 | | $162.41 | | | $(162.41) | $(110.43) |
| 11/25/11 | $6,420.10 | 07/01/11 | $6,420.10 | $12,483.31 | | | | | $6,420.10 | $6,309.67 |
| 12/20/11 | $6,420.10 | 08/01/11 | $6,420.10 | $12,483.31 | | $6,420.10 | | | $0.00 | $6,309.67 |
| 01/19/12 | $6,420.10 | 09/01/11 | $6,420.10 | $12,483.31 | | $6,420.10 | | | $0.00 | $6,309.67 |
| 02/24/12 | $6,420.10 | 10/01/11 | $6,420.10 | $12,483.31 | | $6,420.10 | | | $0.00 | $6,309.67 |
| 03/27/12 | $6,468.84 | 11/01/11 | $6,420.10 | $12,532.05 | | $6,420.10 | | | $0.00 | $6,309.67 |
| 04/30/12 | $6,468.84 | 12/01/11 | $6,420.10 | $12,580.79 | | $6,420.10 | | | $48.74 | $6,358.41 |
| 05/29/12 | $6,468.84 | 01/01/12 | $6,420.10 | $12,629.53 | | $6,420.10 | | | $48.74 | $6,407.15 |
| 06/01/12 | | 02/01/12 | $6,420.10 | $6,209.43 | | $6,420.10 | | | $48.74 | $6,455.89 |
| 06/29/12 | $6,468.84 | 03/01/12 | $6,420.10 | $6,258.27 | | $6,420.10 | | | $(6,420.10) | $35.79 |
| | | | | | | | | | $48.74 | $84.53 |

[Continue on attached sheets if necessary.]

Monthly payments past due: _____17_____ mos. x $ __6,625.90__

(Monthly payment + late charge) = $ __6,625.90__ as of _____.

Each current monthly payment is comprised of:

| | | |
|---|---|---|
| Principal | $ | 4,864.49 |
| Interest | $ | |
| R.E. Taxes: | $ | |
| Insurance: | $ | |
| Late Charge: | $ | |
| Other: | $ | 1,761.41   (Specify: _____escrow_____) |
| TOTAL | $ | 6,626.90 |

If the monthly payment has changed during the pendency of the case, please explain (attach separate sheet(s) if necessary): _____

_____

Pre-petition arrears: __8/1/2010__ to __11/1/2010__ ( __4__ mos. x $ __6,556.39__ /mo. = $ __27,544.12__ )

(Pre-petition arrears include: legal fees- $300.00, late fees- $958.56, and property inspection fees- $60.00)

I certify under penalty of perjury that the above is true.

Date: __2·12·16__

Signature _Sherrie Win_
Assistant Secretary
Nationstar mortgage llc          rev.8/1/15

2

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance | Comments | Applied (P&I) and | Additional Escrow Applied | Fees/Costs/Corp Applied | Payment Suspense | Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/08/12 | $ 6,468.84 | 04/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,420.10 | | | $ 48.74 | $ 133.27 |
| 05/05/12 | $ 6,468.84 | 05/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,420.10 | | | $ 48.74 | $ 182.01 |
| 10/02/12 | $ 6,468.84 | 06/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,420.10 | | | $ 48.74 | $ 230.75 |
| 11/06/12 | $ 6,468.84 | 07/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 12/03/12 | $ 6,468.84 | 08/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 01/07/13 | $ 6,468.84 | 09/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 02/19/13 | $ 6,468.84 | 10/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 03/26/13 | $ 6,468.84 | 11/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 05/09/13 | $ 6,468.84 | 12/01/12 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 05/23/13 | $ 6,468.84 | 01/01/13 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 06/05/13 | $ 6,468.84 | 02/01/13 | $ 6,468.84 | $ 6,258.17 | | $ 6,468.84 | | | | $ 230.75 |
| 04/28/13 | $ 6,887.83 | 03/01/13 | $ 6,468.84 | $ 6,677.01 | | | | | | $ 7,118.56 |
| 06/06/13 | $ 6,887.83 | | | $ 13,564.99 | | | | | $ 6,887.83 | $ 14,006.41 |
| 05/11/13 | $ 6,887.83 | 04/01/13 | $ 6,431.67 | $ 14,021.15 | | $ 7,039.50 | | | $ 153.67 | $ 13,854.74 |
| 11/17/13 | | 05/01/13 | $ 6,431.67 | $ 9,585.48 | | $ 7,039.50 | | | $ 7,039.50 | $ 6,815.24 |
| 12/03/13 | $ 4,500.00 | 06/01/13 | $ 6,431.67 | $ 6,677.81 | | $ 7,039.50 | | | $ 2,539.50 | $ 4,275.24 |
| 01/10/14 | $ 4,500.00 | | | $ 10,157.81 | | | | | $ 4,500.00 | $ 8,775.24 |
| 02/10/14 | $ 6,000.00 | 07/01/13 | $ 6,625.90 | $ 9,531.91 | | $ 7,039.50 | | | $ 1,039.50 | $ 7,736.24 |
| 03/07/14 | $ 6,000.00 | 08/01/13 | $ 6,625.90 | $ 8,306.01 | | $ 7,039.50 | | | $ 1,039.50 | $ 6,696.74 |
| 04/09/14 | $ 6,000.00 | 09/01/13 | $ 6,625.90 | $ 8,180.11 | | $ 7,039.50 | | | $ 1,039.50 | $ 5,657.26 |
| 05/12/14 | $ 6,000.00 | 10/01/13 | $ 6,625.90 | $ 7,654.21 | | $ 7,039.50 | | | $ 1,039.50 | $ 4,117.74 |
| 07/18/14 | $ 7,039.50 | 11/01/13 | $ 6,625.90 | $ 8,067.81 | | $ 7,039.50 | | | | $ 4,512.74 |
| 07/18/14 | $ 10,560.50 | | | $ 19,028.31 | | | | | $ 10,560.50 | $ 15,072.24 |
| 07/22/14 | | | | $ 29,028.31 | | $ 7,039.50 | | | $ 7,039.50 | $ 8,538.74 |
| 08/11/14 | $ (1,039.50) | | | $ 17,988.81 | | | | | $ 1,039.50 | $ 7,499.24 |
| 08/11/14 | $ 7,039.50 | 12/01/13 | $ 6,625.90 | $ 24,402.41 | | $ 7,039.50 | | | | $ 7,499.24 |
| 02/25/15 | $ (1,039.50) | | | $ 17,362.91 | | | | | | $ 6,459.74 |
| 02/25/15 | $ 7,039.50 | 01/01/14 | $ 6,625.90 | $ 17,776.51 | | $ 7,039.50 | | | | $ 6,459.74 |
| 04/16/15 | $ (1,039.50) | | | $ 26,737.01 | | | | | $ 1,039.50 | $ 5,970.24 |
| 04/16/15 | $ 7,039.50 | 02/01/14 | $ 6,625.90 | $ 27,150.61 | | $ 7,039.50 | | | | $ 5,410.24 |
| 07/06/15 | $ (1,039.50) | | | $ 24,111.11 | | | | | $ 1,039.50 | $ 4,280.24 |
| 07/06/15 | $ 7,039.50 | 03/01/14 | $ 6,625.90 | $ 16,536.71 | | $ 7,039.50 | | | | $ 4,280.24 |
| 08/24/15 | $ (1,539.50) | | | $ 14,536.21 | | | | | $ 1,539.50 | $ 2,812.24 |
| 08/24/15 | $ 7,039.50 | 04/01/14 | $ 6,625.90 | $ 15,949.81 | | $ 7,039.50 | | | | $ 2,812.24 |
| 09/17/15 | $ 5,500.00 | | | $ 20,188.81 | | | | | $ 5,500.00 | $ 8,312.24 |
| 09/30/15 | $ (7,039.50) | 05/01/14 | $ 6,625.90 | $ 13,162.91 | | | | | $ 7,039.50 | $ 1,301.74 |
| 09/30/15 | $ 7,039.50 | 06/01/14 | $ 6,625.90 | $ 7,617.01 | | $ 7,039.50 | | | | $ 1,301.74 |
| 12/01/15 | $ 5,500.00 | | | $ 13,142.01 | | | | | $ 5,500.00 | $ 6,801.74 |
| | | 07/01/14 | $ 6,625.90 | $ 6,521.11 | | | | | | $ 6,801.74 |
| | | | | $ 6,521.11 | | | | | | $ 6,801.74 |





*Ex E*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re:

RANDALL S.D. JACOBS
JILL W JACOBS
      Debtor(s)

Case No. 10-46222

## CHAPTER 13 STANDING TRUSTEE'S FINAL REPORT AND ACCOUNT

    Marie-Ann Greenberg, Chapter 13 Trustee, submits the following Final Report and Account of the administration of the estate pursuant to 11 U.S.C. § 1302(b)(1). The trustee declares as follows:

1) The case was filed on <u>11/22/2010</u>.

2) The plan was confirmed on <u>03/28/2011</u>.

3) The plan was modified by order after confirmation pursuant to 11 U.S.C. § 1329 on <u>NA</u>.

4) The trustee filed action to remedy default by the debtor in performance under the plan on <u>08/09/2011</u>.

5) The case was completed on <u>11/03/2015</u>.

6) Number of months from filing to last payment: <u>59</u>.

7) Number of months case was pending: <u>63</u>.

8) Total value of assets abandoned by court order: <u>NA</u>.

9) Total value of assets exempted: <u>$67,234.06</u>.

10) Amount of unsecured claims discharged without payment: <u>$0.00</u>.

11) All checks distributed by the trustee relating to this case have cleared the bank.

**UST Form 101-13-FR-S (9/1/2009)**



### Receipts:

| | |
|---|---|
| Total paid by or on behalf of the debtor | $335,876.00 |
| Less amount refunded to debtor | $789.42 |

**NET RECEIPTS:** $335,086.58

### Expenses of Administration:

| | |
|---|---|
| Attorney's Fees Paid Through the Plan | $7,155.11 |
| Court Costs | $0.00 |
| Trustee Expenses & Compensation | $18,874.10 |
| Other | $0.00 |

**TOTAL EXPENSES OF ADMINISTRATION:** $26,029.21

Attorney fees paid and disclosed by debtor: $3,500.00

### Scheduled Creditors:

| Creditor Name | Class | Claim Scheduled | Claim Asserted | Claim Allowed | Principal Paid | Int. Paid |
|---|---|---|---|---|---|---|
| AMERICAN EXPRESS BANK | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| AMERICAN EXPRESS BANK | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| AMERICAN EXPRESS CENTURION I | Unsecured | 900.00 | 902.99 | 902.99 | 902.99 | 0.00 |
| AMERICAN EXPRESS CENTURION I | Unsecured | 28,574.00 | 28,599.06 | 28,599.06 | 28,599.06 | 0.00 |
| BMW FINANCIAL SERVICES NA | Unsecured | NA | 350.00 | 350.00 | 350.00 | 0.00 |
| BMW FINANCIAL SERVICES NA | Secured | NA | 0.00 | 0.00 | 0.00 | 0.00 |
| CHASE | Unsecured | 0.00 | NA | NA | 0.00 | 0.00 |
| CITIBANK NA | Unsecured | 126.00 | 126.42 | 126.42 | 126.42 | 0.00 |
| INTERNAL REVENUE SERVICE | Priority | NA | 37,095.98 | 37,095.98 | 37,095.98 | 0.00 |
| NATIONSTAR MORTGAGE LLC | Secured | 38,000.00 | 27,544.12 | 27,544.12 | 27,544.12 | 0.00 |
| SALLIE MAE PC TRUST | Unsecured | 51,290.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| STATE OF NJ | Unsecured | NA | 760.82 | 760.82 | 760.82 | 0.00 |
| STATE OF NJ | Priority | 0.00 | 6,076.47 | 6,076.47 | 6,076.47 | 0.00 |
| STATE OF NJ DIVISON OF TAXATI | Priority | NA | 8,300.00 | 8,300.00 | 8,300.00 | 0.00 |
| UNITED STATES TREASURY/IRS | Secured | 70,377.87 | 70,377.87 | 70,377.87 | 70,377.87 | 0.00 |
| UNITED STATES TREASURY/IRS | Priority | 40,498.21 | 40,498.21 | 40,498.21 | 40,498.21 | 0.00 |
| UNITED STATES TREASURY/IRS | Unsecured | 86,965.00 | 88,425.43 | 88,425.43 | 88,425.43 | 0.00 |
| VL FUNDING | Unsecured | 59,363.00 | 0.00 | 0.00 | 0.00 | 0.00 |

**UST Form 101-13-FR-S (9/1/2009)**



Ack. Ltr. – Escrow – No Fees                    1 of 1                                11/12/2013

E+F

## Letter of Acknowledgment

November 12, 2013

Randall Jacobs
Jill Jacobs
5 HAMPTON CT CALDWELL NJ 07006

RE: Loan Number: 610106924

Dear Randall & Jill Jacobs,

    Attached for execution is the Modification Agreement for your loan serviced by Nationstar Mortgage, LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan.).

    By executing this Letter of Acknowledgment and the Modification Agreement, you are agreeing to make a qualifying payment of $0.00 dollars ("Qualifying Payment") for your Modification Agreement to become effective. This Qualifying Payment will be applied first to any outstanding fees and charges that are not capitalized under the terms of the Modification Agreement, next to any unpaid non-capitalized interest and finally to unpaid principal. If you fail to make this qualifying payment (or such payment is returned for non-sufficient funds or otherwise denied by the issuing bank), the Modification Agreement shall be deemed invalid and Nationstar Mortgage, LLC shall have no obligation to modify your loan in accordance with the terms of the Modification Agreement.

    In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of you loan account. You acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

    Should you have any questions regarding the terms of this Letter of Acknowledgment or the Modification Agreement, please do not hesitate to contact _____ at _____.

Sincerely,

Nationstar Mortgage, LLC

Acknowledged and agreed to by:

_____
Randall Jacobs - (Borrower Name)

_____          _____
Jill Jacobs - (Borrower Name)                                                      (Date)

_____
(Date)

LOAN MODIFICATION AGREEMENT — Cap Fixed

11/12/2013    *(page 1 of 3)*

_____ [Space Above This Line For Recording Data] _____

Loan #: 610106924

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 12th day of November, 2013 , between Randall Jacobs and Jill Jacobs ("Borrower") and Nationstar Mortgage LLC formerly known as Centex Home Equity Company ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated    May 13, 2005    and recorded in Book or Liber _____ , at page(s) _____ , of the _____ Records of _____

(Name of Records)                    (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

5 Hampton Ct Caldwell Nj 07006
(Property Address)

the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of  November 01, 2013 , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 709,823.03 , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of  5.500% , from  October 01, 2013 . Borrower promises to make monthly payments of principal and interest of U.S. $ 4,678.01 , beginning on the 1st day of November, 2013 , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  The yearly rate of  5.500%  will remain in effect until principal and interest are paid in full.  If on June 01, 2035  (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

LOAN MODIFICATION AGREEMENT — Cap Fixed

11/12/2013   *(page 2 of 3)*

Loan #: 610106924

5. Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.


_____ (Seal)
Nationstar Mortgage LLC-Lender

_____ (Seal)
Randall Jacobs -Borrower

By: _____

_____ (Seal)
Jill Jacobs -Borrower

STATE OF                        )
                               )SS.
COUNTY OF                       )


On   the   ____   day   of   _____,   _____,   personally   appeared   before   me
_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____
Notary Public                        My appointment expires: _____

_____ [Space Below This Line for Acknowledgements] _____



AGREEMENT TO ESTABLISH ESCROW ACCOUNT Cap Fixed

11/12/2013 *(page 3 of 3)*

_____ [Space Below This Line For Acknowledgments] _____

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, Randall Jacobs and Jill Jacobs ("Borrower") desires Nationstar Mortgage LLC   ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated May 13, 2005 , (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender:

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Establish Escrow Account

_____
Randall Jacobs -Borrower

_____
Date

_____
Jill Jacobs -Borrower

_____
Date

B 2100A (Form 2100A) (12/15)



# UNITED STATES BANKRUPTCY COURT

### District of New Jersey

In re JACOBS, RANDALL & JACOBS, JILL ,          Case No. 10-46222-RG

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| Shellpoint Mortgage Servicing | Nationstar Mortgage, LLC |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:
Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

Phone: 800-365-7107
Last Four Digits of Acct #: 2140

Court Claim # (if known): 3-1
Amount of Claim: $731,781.79
Date Claim Filed: 08/06/2013

Phone: _____
Last Four Digits of Acct. #: 6924

Name and Address where transferee payments should be sent (if different from above):

Phone: _____
Last Four Digits of Acct #:_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ Maria Cozzini, Esq.          Date: 04/18/2019
Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.



Shellpoint
Mortgage Servicing



P.O. Box 10826
Greenville, SC 29603-0826

Phone: 800-365-7107
Fax: 866-467-1137
www.shellpointmtg.com

Hours of operation
Mon - Thur: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

November 9, 2018

RANDALL JACOBS
JILL JACOBS
LEVITT & SLAFKES, P.C.
515 VALLEY STREET- SUITE 140
MAPLEWOOD NJ 07040

Account Number: ████████
Principal Balance: $630,477.39
Property Address: 5 HAMPTON CT
CALDWELL, NJ 07006

Dear Homeowner(s):

**Shellpoint Mortgage Servicing ("Shellpoint")** welcomes you! We're pleased that the owner of your mortgage loan has entrusted us to service your account.

**The servicing of your mortgage is being transferred.** Effective 11/01/2018, the **servicing** of your mortgage loan (collecting payments, paying taxes and insurance, etc.) transfers from Nationstar to Shellpoint.

**Important bankruptcy notice.** If you are in bankruptcy or have received a bankruptcy discharge of this debt, this notice is to advise you of the status of your mortgage loan. If your debt has been discharged in accordance with applicable bankruptcy laws, or if you are subject to the automatic stay of Section 362 of the United States Bankruptcy Code, this notice is neither a demand for payment or a notice of personal liability. However, this may be a notice of possible enforcement of the lien against the collateral property that was not discharged in your bankruptcy.

Your prior servicer, Nationstar, will stop accepting payments on 11/01/2018. Shellpoint will start accepting mortgage payments on 11/01/2018.

**Manage your mortgage online.** To help you manage your mortgage account, we've created a set of easy-to-use online **tools**. Just use your computer, tablet, or phone to visit our website at **www.shellpointmtg.com**. If you haven't already done so, select the **Setup Your Account** option from the **Tools** menu and create an account with us. After you've set up your account, you can view and print statements, get answers to common questions, chat with a live representative, and more.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

Case 10-46222-RG    Doc 77    Filed 04/18/19    Entered 04/18/19 09:02:01    Desc Main
Document    Page 3 of 8

Shellpoint Welcome Package, page 2                                              Shellpoint Loan ID:

**Call us if you need to** at **800-365-7107**. Our **automated phone system** gives you 24-hour access to your account, so you can check payment status, get answers to common questions, and access a wide range of account information. If you need to speak with someone, our Customer Care Team is available **Mon. – Fri. 8 a.m.** to **10 p.m.** and **Sat. 8 a.m.** to **3 p.m.** (Eastern time).

**Were you working on a loan modification or other loss-mitigation plan?** If you completed a loan modification or other loss-mitigation plan with your previous servicer—or if you applied for such a plan—please call us right away. Dial **888-436-4402** ext. **5963**, to speak with your SPOC (Single Point of Contact), **Patrick Lovejoy**, so we can make sure your plan information has been properly transferred to us. If necessary, we'll contact your previous servicer to obtain missing documents.

**¿Hablas Español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al numero **800-365-7107**.

*Welcome to Shellpoint!* We look forward to serving you, and we're committed to providing you with an excellent mortgage-servicing experience.

Sincerely,

*Customer Care Team*
**Shellpoint Mortgage Servicing**
P.O. Box 10826
Greenville, SC 29603-0826
**800-365-7107**

Shellpoint Welcome Package, page 3            Shellpoint Loan ID: ▇▇▇▇

# Helping You Manage Your Mortgage



Please review the following important information regarding your loan.

---

### Loan Information

To help simplify the management of your mortgage,
we have provided the following information.

| Terms of Your Mortgage | |
|---|---|
| Loan Number | ▇▇▇▇▇▇ |
| Loan Origination Date | 05/13/2005 |
| Original Loan Amount | $750,000.00 |
| Current Interest Rate | 6.75% |
| Term | 360 months |
| Maturity Date | 06/01/2035 |

| Current Balances | |
|---|---|
| Principal Balance | $630,477.39 |
| Escrow Balance | $-50,649.25 |

### *Reach Out to Us*



Call
800-365-7107



Live Chat
www.shellpointmtg.com



Secure Email
www.shellpointmtg.com

Case 10-46222-RG   Doc 77   Filed 04/18/19   Entered 04/18/19 09:02:01   Desc Main
Document      Page 5 of 8

Shellpoint Welcome Package, page 4                                                                Shellpoint Loan ID:

# *FAQs*

| | |
|---|---|
| **What if I make a payment to my previous servicer?** | Your previous servicer will forward your payment to us. |
| **Will the terms of my mortgage loan be affected by this servicing transfer?** | No. The terms of your mortgage are not affected by this transfer, other than those directly related to the servicing of your loan. |
| **What if I have more than one loan?** | This letter refers only to loan number 0578512140.  If more than one loan is transferring to Shellpoint, we will send you a Welcome Letter and information for each loan. |

Except in limited circumstances, the law requires your present servicer to send notice at least 15 days before the effective date of transfer or at closing.  Your new servicer must also send you this notice no later than 15 days after the effective date or transfer date or at closing.  The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage, other than the terms directly related to the servicing of your loan (e.g. payments and inquiries).

By January 31 of each year, Shellpoint Mortgage Servicing provides an Annual Tax and Interest Statement for IRS reporting on the portion of the previous year that Shellpoint Mortgage Servicing serviced your loan. If your loan is currently escrowed for taxes and/or insurance, Shellpoint Mortgage Servicing is required by law to analyze your loan. Shellpoint Mortgage Servicing will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is explained in more detail in Section 6 and Section 12 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605, 12 CFR Sections 1024.35 and 1024.36).

RESPA Section 6 and Section 12 give you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within five (5) business days of receiving your request. A "qualified written request" is a written correspondence—other than writing on a payment coupon or other payment-related documents supplied by your servicer—that includes your name, account number, and reasons for the request. Send all qualified written requests to Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826; or you can call 800-365-7107.

No later than thirty 30 days (not including weekends and legal public holidays) after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 30-day period, your servicer may not provide information to a consumer-reporting agency concerning any overdue payment related to the 30-day period or your qualified written request. However, the servicer may still begin foreclosure proceedings if proper grounds exist under the mortgage documents.

A "business day" is a day on which the offices of the business are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals if servicers are shown to have violated the requirements of that Section. Seek legal advice if you believe your rights have been violated.

If you have any questions for your previous servicer, Nationstar, about your mortgage loan or this transfer, please contact their Customer Service department:

Nationstar
8950 Cypress Waters Blvd.
Coppell, TX 75019
(888) 480-2432

Case 10-46222-RG    Doc 77    Filed 04/18/19    Entered 04/18/19 09:02:01    Desc Main
Document      Page 6 of 8

**Please read the following important notices as they may affect your rights.**

New Penn Financial LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.



If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.

如果您要使用英语以外的其他语言进行交流，请致电 800-365-7107， 我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Stern, Lavinthal & Frankenberg, LLC<br>105 Eisenhower Parkway, Suite 302<br>Roseland, New Jersey 07068-0490<br>Telephone Number (973) 797-1100<br>Facsimile Number (973) 228-2679<br>Attorneys for Creditor, BSI Financial<br>By: Maria Cozzini, Esq. | |
| --- | --- |
| | Case No.: ___10-46222-RG___ |
| | Chapter: ___13___ |
| In Re:<br><br>Randall S D Jacobs<br><br>Jill W Jacobs | Adv. No.: _____ |
| | Hearing Date: _____ |
| | Judge: ___Rosemary Gambardella___ |

## CERTIFICATION OF SERVICE

1.  I, _____Sean Bolduc_____ :

    ☐ represent _____ in this matter.

    ☒ am the secretary/paralegal for _Stern, Lavinthal & Frankenberg, LLC_, who represents

    _____Secured Creditor_____ in this matter.

    ☐ am the _____ in this case and am representing myself.

2.  On _____April 18, 2019_____, I sent a copy of the following pleadings and/or documents
    to the parties listed in the chart below.
    TRANSFER OF CLAIM

3.  I certify under penalty of perjury that the above documents were sent using the mode of service
    indicated.

Date: ___April 18, 2019___          /s/ Sean Bolduc
                                     _____
                                     Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Randall S D Jacobs<br>5 Hampton Court<br>Caldwell, NJ 07006<br><br>Jill W Jacobs<br>5 Hampton Court<br>Caldwell, NJ 07006 | Debtor | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Eric David Reiser<br>LoFaro & Reiser, LLP<br>20 Court Street<br>STE 4<br>Hackensack, NJ 07601 | Debtor Attorney | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☒ Other ECF<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
|  |  | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other ECF<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
|  |  | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
|  |  | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |

2